# RUDOLPH ROHLIK, Appellant, v. FARMERS INSURANCE COMPANY, a Corporation, Respondent.

(191 N. W. 347.)

**Insurance — standard fire insurance provisions fix measure of indemnity in fire insurance policy on personal property.**

1. The provision in the North Dakota Standard Fire Insurance Policy that the insurer shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs; that such loss or damage shall be ascertained or estimated according to such actual cash value, and shall in no event exceed what it would then cost to repair or replace the same is valid as regards fire insurance on personal property and fixes the measure of indemnity in a fire insurance policy upon personal property in this state.

**Evidence — yield of like crops during same season in neighborhood admissible to show loss sustained under policy insuring stacks of unthreshed grain.**

2. In an action on a fire insurance policy for the loss of certain stacks of unthreshed grain, evidence of yield of like crops during the same season, in neighboring fields of like quality and character, under similar conditions and circumstances, is admissible upon the question of the amount of loss sustained.

**Evidence — evidence of offer for grain not admissible where date not fixed at time of destruction by fire.**

3. Certain assignments of error predicated upon rulings on evidence examined and held nonprejudicial.

**Appeal and error — insured not prejudiced by correct instructions on false report of loss where sustained by evidence.**

4. Certain assignments of error predicated upon the instructions to the jury examined and held nonprejudicial.

Opinion filed November 23, 1922.

Appeal and Error, 4 C. J. § 2987 p. 1006 n. 70; § 3026 p. 1042 n. 37. Evidence, 22 C. J. § 154 p. 190 n. 42. Fire Insurance, § 49 p. 56 n. 53; § 450 p. 351 n. 83; § 747 p. 533 n. 98.

From a judgment of the District Court of Stark County, *Lembke, J.*, plaintiff appeals.

Affirmed.

*C. H. Starke,* for appellant.

Note.—On value of property fixed in fire insurance policy on personal property, see 14 R. C. L. 1305; 3 R. C. L. Supp. 379; 4 R. C. L. Supp. 959; 5 R. C. L. Supp. 811.

Instructions which have no application to any view which can be taken of the evidence should not be given whether they are correct or not. Mariner v. Dennison (Cal.) 20 Pac. 386; People v. Manning (Cal.) 79 Pac. 856; People v. Sanches, 24 Cal. 17.

But it frequently happens that judges give such instructions, then it becomes necessary to determine whether the judgment ought to be reversed on account of the instruction. And in this regard the test is not whether the instruction was erroneous, but whether it was misleading. The giving of such instruction is seldom otherwise than misleading if for no other reason, because the jury are apt to think that they are really based upon evidence, actually given but overlooked by them. Hayne, New Trial & Appeal, p. 643, § 122; People v. Maughs (Cal.) 86 Pac. 187; George v. Ry. Co. (Cal.) 78 Pac. 819.

It set prominently before the minds of the jury an element which was really nonexistent in the case, and left them at liberty to make it an ingredient in the assessment of damages. Powers v. Wheatly, 45 Cal. 113.

The rule applicable to an instruction such as these complained of, as we deduce it from the cases, is:

If an instruction is erroneous and have application to the evidence the judgment must necessarily be reversed, but if the instruction have no application to the evidence, the judgment will not be reversed unless the jury may have been misled. Hirschberg v. Strauss (Cal.) 28 Pac. 236; Comptoir v. Dresbach (Cal.) 20 Pac. 28; People v. Gleason (Cal.) 55 Pac. 123; Hagerty v. Strong (S. D.) 74 N. W. 1037; Christianson v. Hendrie, 128 N. W. 608; Jones v. Matheisen, 2 Dak. 523, 11 N. W. 109; Barron v. N. P. Ry. Co. 16 N. D. 277; Elliot Supply Co. v. Gleason, 35 N. D. 641; 38 Cyc. 1612.

*T. F. Murtha* and *J. M. Hanley,* for respondent.

The thresherman who lived in that neighborhood for a great many years and threshed there for a great many years, gave the averages of the neighborhood's crops that he threshed in 1921. There was no error in this. Stockwell v. Ins. Co. (S. D.) 158 N. W. 450.

In action on a hail insurance policy, evidence of crop yield in neighboring fields, held, admissible for the purpose of establishing amount of plaintiff's loss; there being evidence that conditions were practically similar before loss.

"Appellant urges that it was error to allow evidence as to the crop yield of respondent's neighbors for the purpose of establishing the amount of respondent's loss. There was evidence tending to show that the crop conditions of the neighbors were practically the same as those of respondent before the hailstorm. It is true this evidence was not as definite as it might have been. It was, however, sufficient to constitute a prima facie showing, and, being uncontroverted, we think it sufficient to justify the rulings complained of. The trial court carefully protected appellant's rights in this respect in his charge to the jury." Lone Star Co. v. Browsard, 176 S. W. 649; Evans v. Keystone Gas Co. (N. Y.) 42 N. E. 513.

CHRISTIANSON, J. This is an action on a fire insurance policy. The policy was of the usual standard form adopted in this state and was issued to the plaintiff by the defendant insurance company on August 5, 1921. By the terms of the policy the defendant insured the plaintiff against loss or damage by fire in the sum of $3,500 upon certain grain, corn, and ground feed in buildings or in stacks situated upon certain premises described in the policy. On or about August 24, 1921, all the grain in stacks on the premises described in the policy was totally destroyed by fire. This was all property of the kind covered by the policy then in existence. The plaintiff submitted proofs of loss claiming the full sum stated in the policy. The defendant failed to make payment and plaintiff brought suit. The defendant interposed a general denial. It also asserted as affirmative defenses that the policy was void because the property covered thereby was mortgaged; that the plaintiff had failed to construct a fire guard as stipulated in the application on which the policy was based; and that he had rendered a false sworn statement as to the value of the property with the intentional and premeditated design to deceive and defraud the defendant. The jury returned a verdict in favor of the plaintiff and against the defendant in the sum of $1,209, with interest from the date the loss became payable under the terms of the policy. The plaintiff moved for judgment notwithstanding the verdict for the full amount of the policy. The motion was denied. Judgment was thereupon entered pursuant to the verdict and plaintiff has appealed.

It is contended by the plaintiff that he was entitled to recover the full amount of the policy. In other words, it is contended that the policy sued on was in legal effect a valued policy. This contention is based on § 6623, Comp. Laws, 1913, which reads: "If there is no valuation in the policy, the measure of indemnity in an insurance against fire is the full amount stated in the policy; but the effect of a valuation in a policy of fire insurance is the same as in a policy of marine insurance." In our opinion the contention is not well founded. Section 6623, supra, was part of the code of the territory of Dakota of 1877 (see Civ. Code 1877, § 1633); and it has remained a part of the statutory law of this jurisdiction since that time. In 1890 the legislature of this state enacted "An act to provide for a uniform policy of fire insurance to be made and issued in this state by all insurance companies taking fire risks on property within this state;" Laws 1890, chap. 74. By this act the insurance commissioner was required to "prepare and file in his office on or before the 1st day of August, 1890, a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be indorsed thereon, or added thereto, and form a part of such contract or policy. . . ." The act, § 1, declared that "such form when so filed shall be known and designated as The North Dakota Standard Policy." The act, § 1, further declared that "such form shall, as near as the same can be made applicable, conform to the type and form of the New York Standard Fire Insurance Policy. . . ." It was made the duty of the attorney general to aid the insurance commissioner in the preparation of such standard policy. The act, § 4, further provided that "on and after the 1st day of October, A. D. 1890, no fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use, any fire insurance policy or renewal of any fire policy on property in this state, other than such as shall conform in all particulars" to the policy so prescribed.

The provisions of chapter 74, Laws 1890 were embodied in the Revised Codes of 1895. The language, however, was altered to apply to the then existing condition. That is, the language of the law was changed so as to refer to the policy which had been prepared and filed by the commissioner of insurance. The provision so embodied as part of the Revised Codes of 1895 is still the law of this state and reads as

follows: "No fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use any fire insurance policy or renewal of any fire policy on property in this state other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with the printed form of contract or policy heretofore filed in the office of the commissioner of insurance as a standard policy for this state and no other or different provisions, agreement, condition or clause shall in any manner be made a part of such contract or policy or be indorsed thereon or delivered therewith. . . ." Revised Codes, 1895, § 4608; Comp. Laws, 1913, § 6625. The North Dakota Standard Policy form, which as already stated is the policy involved here, contains the following stipulation: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained and estimated according to such actual cash value . . . and shall in no event exceed what it would then cost the insured to repair or replace the same. . . ." In our opinion this is a valid stipulation in a fire insurance policy on personal property in this state and fixes the amount of compensation to which the insured is entitled in case of loss. The provision would unquestionably be a valid one, in the absence of a statute inhibiting the parties to an insurance contract from so contracting. The provision here, however, stands upon a firmer foundation. Not only is there no statute prohibiting the parties from so contracting but the lawmakers of the state have said that this provision must be included in every contract of fire insurance (upon personal property) issued or delivered for use in this state. It is quite apparent that the legislature was of the opinion that a valued policy did not exist under the laws of this state, for in 1907 it enacted the so-called "Valued Policy Act," which provides: "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire and that property insured shall be destroyed without fraud on the part of the insured or his assigns, the stated amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured." Laws 1907, § 1, chap. 158. The act carried an emergency clause, stating that there was then no law covering the subject. Laws 1907, § 3, chap. 158. It will be noted that chap. 158, Laws 1907 is restricted to policies of insurance on *real*

property, and the then existing law relating to fire insurance policies on personal property was in no manner disturbed.

It is true the statute provides that policies of insurance in the prescribed North Dakota Standard Fire Insurance Policy form "shall be in all respects subject to the same rules of construction as to their effect or the waiver of any of their provisions as if the form thereof had not been prescribed." Comp. Laws, 1913, § 6626. This, however, in no manner detracts from the contractual force and effect of a provision like that involved here. That provision is that the insurance company shall not be liable beyond the actual cash value of the property at the time the loss or damage occurred; that such loss or damage shall be ascertained or estimated according to such actual cash value, and shall in no event exceed what it would then cost the insured to repair or replace the same. This language is too plain to require interpretation, and must be enforced according to the meaning and intent so evidenced.

It is next contended that the court erred in sustaining objections to the following two questions, which were propounded to plaintiff by his counsel:

1. "What did you pay for that straw?"

2. "What was the price agreed upon between you and Mr. Privratsky as the price to be paid for this barley?"

The first question related to a certain stack of straw which plaintiff testified he purchased in the fall of 1921. As a matter of fact plaintiff answered the question and stated that he paid $15 for the strawstack, but the answer was given after objection had been interposed, and upon the objection being sustained the answer was ordered to be stricken. Before this question was asked, however, plaintiff had been permitted to testify fully as to the amount of straw destroyed and the value thereof. Specifically, plaintiff had testified; that he knew the value of straw in that vicinity on the day of the fire; that wheat straw was worth $5 per load, and oats and barley straw $6 to $6.50 per load; that in his judgment there were between 20 and 25 loads of wheat straw, about 20 loads of oats straw and about 20 loads of barley straw destroyed by the fire.

The second question related to the price a certain Mr. Privratsky had agreed to pay the plaintiff for certain barley in stack in the fall of 1921. There was no attempt to show the date of such alleged agreement. So

far as the record shows it might have been at a date long prior to August 24th, 1921. As already stated the plaintiff was permitted to testify as to the value of the straw. He was also permitted to testify, and did testify without objection, that there was no barley for sale in the vicinity of his farm. He was thereupon permitted to prove and did prove the market value of barley in Dickinson, as based upon the Minneapolis market and the applicable freight rate, and the cost of transporting the barley from Dickinson to plaintiff's farm where the loss occurred. In these circumstances we are unable to see how the plaintiff could have been prejudiced by the rulings complained of, even though such rulings had been erroneous, which it is not apparent that they were.

Error is also assigned upon the rulings of the court in permitting the defendant to show the amount of similar grain produced in 1921 on other lands of similar character in that immediate vicinity. In our opinion this evidence was admissible. Where growing crops are destroyed, or where, as here, grain in stack is destroyed before it is threshed, we think, it is proper to receive evidence of the average product or yield of like crops upon other lands of similar character and quality in that immediate neighborhood, under like circumstances and conditions. Such evidence is of some probative force in determining the probable amount of grain which would have been produced if the crop had been threshed. 2 Sutherland, Damages, 4th ed. § 447, p. 1450; Lommeland v. St. Paul, M. & M. R. Co. 35 Minn. 412, 29 N. W. 119; Stockwell v. German Mut. Ins. Asso. Co. 37 S. D. 348, 158 N. W. 450. The record in this case, however, shows that most of the evidence offered by the defendant as to the crop yield on neighboring fields was excluded. In fact the evidence admitted was so meager that it is wholly unlikely that it had any effect whatever upon the verdict. In our opinion the plaintiff has no ground whatever for complaint so far as the rulings of the court as regards this class of evidence.

Error is also assigned on the court's instructions to the jury. The instructions complained of are those relating to the defense interposed by the defendant to the effect that the plaintiff had verified and submitted false and fraudulent proofs of loss. There is no contention that the instructions given were in fact erroneous, but it is asserted that there was no competent evidence tending to establish such defense and

**49 N. D.—16.**

hence that that issue should not have been submitted to the jury. In our opinion no prejudicial error is shown. According to the evidence adduced by the defendant the valuation made by the plaintiff in his proof of loss was greatly in excess of the real value of the property destroyed. The testimony adduced by the defendant tended to show that. the property destroyed by the fire was worth only about $600, while the plaintiff in his sworn proof of loss stated it had a value of $4,000, and presented a claim against the company for the full amount of the policy, namely for $3,500. The jury in its verdict found the property to be worth $1,209. No request was made by the plaintiff that the issue in question be eliminated from the jury's consideration or that any instructions to that effect be given to the jury. We are not prepared to say that the court should have eliminated this evidence from the consideration of the jury at all, and it certainly was not required to do so of its own volition. See 19 Cyc. 856, 950. See also Guild v. More, 32 N. D. 432, 475, 155 N. W. 44.

It is apparent, however, that the plaintiff was in no manner prejudiced by this instruction. The court specifically charged that the defendant had the burden of proving to the jury that the plaintiff wilfully made false and fraudulent representations in his proof of loss. In order to return the verdict which it did, the jury must have determined this issue against the defendant, that is, the jury must have found that the plaintiff was not guilty of fraud or false swearing. Hence, we are unable to see wherein the plaintiff was in any event prejudiced by the giving of these instructions.

It is also claimed that the instructions as to the manner of determining the value of the property destroyed were confusing. In our opinion plaintiff was not prejudiced by the instructions complained of. On this question the court specifically instructed the jury thus: "These are questions of fact, gentlemen, of the jury, that you are especially fitted to pass upon, and it is for you at last to say, if you find for the plaintiff, what his actual loss by said fire was, and if you find for the plaintiff, then you will assess the plaintiff's actual loss sustained by said fire. Said loss would include the grain and straw destroyed. After having found the actual loss of each and every article, then you will apply the reasonable market value thereof. That is, the value to the

plaintiff and other people in his vicinity had to apply to buy or sell grain and straw of like nature on August 24th, 1921."

No further or additional instructions were requested by the plaintiff on this issue.

In the course of the argument it is asserted by the defendant that the policy of insurance did not cover straw and that consequently the plaintiff was not entitled to recover the value of the straw destroyed. This question, however, is not before us as the defendant has not assailed the verdict or the judgment. It is apparent, however, that the error, if any, with respect to the straw was favorable to the plaintiff. This disposes of the various questions argued on this appeal, and it follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

BIRDZELL, Ch. J., and ROBINSON and BRONSON, JJ., concur.

GRACE, J. (specially concurring). The verdict of the jury and the judgment entered thereon do not give plaintiff an amount of money greater than the actual cash value of the property at the time of its loss by fire, and should therefore be permitted to stand.

There is no reversible error in the record. I therefore, concur in the affirmance of the judgment.