JACOB ROQUETTE, Respondent, v. FARMERS INSURANCE COMPANY, a Corporation, Appellant.

(191 N. W. 772.)

**Insurance — not error to refuse insured's amendment to show assignment of policy under which assignees make no claim.**
    1. In an action, on a policy of insurance, for damages caused by windstorm it is *held:*
    That the trial court did not err in denying defendant's application for leave to amend the answer.

**Insurance — instruction on measure of damages, where total loss of insured property, held proper; refusal of instruction on good faith of insurer**

to repair, where building total loss, held not erroneous; instruction as to false representation in application and proof of loss held proper.

2. That instructions complained of were nonprejudicial.

Opinion filed December 30, 1922.

Appeal and Error, 4 C. J. § 2890 p. 918 n. 42; § 3013 p. 1029 n. 30; § 3031 p. 1048 n. 76. Insurance, 33 C. J. § 807 p. 92 n. 71; § 877 p. 142 n. 57. Trial, 38 Cyc. p. 1711 n. 19.

From a judgment of the District Court of Stark County, *Lembke,* J., defendant appeals.

Affirmed.

*T. F. Murtha,* for appellant.

"No formal words are necessary to make an assignment of the policy *after loss;* anything showing an intent to assign on the one side and an intent to receive on the other will so operate. In the absence of a provision to the contrary, it need not be in writing, a parol assignment being sufficient. *The assignment may be effected by an order on the insurer to pay the amount due,* by an indorsement without delivery, or by assignment *of the loss or damage* which has accrued." 26 C. J. 447.

A party cannot maintain an action after assigning his claim. Sylvester v. Mackey (N. D.) 183 N. W. 1019.

"The rule that policies of insurance should be liberally construed in favor of insured, because prepared by the insurer, has no application, where the contract is in the form prescribed by statute." McCready v. Ins. Co. 70 N. Y. Supp. 778; Tepman v. Ins. Co. 120 Ill. App. 379; Shoe Co. v. Ins. Co. 178 S. W. 246.

The defense should have gone to the jury. If defendant made the offer to repair in good faith and within time, such offer if kept good is a bar to an action on the policy for money damage. 26 C. J. 448–451; Winston v. Ins. Co. (D. C.) 20 L.R.A.(N.S.) 960; Platt v. Ins. Co. (Ill.) 26 L.R.A.(N.S.) 853; Inc. Co. v. Barnard, 29 C. C. A. 562, 11 Fed. 705; Beals v. Ins. Co. 36 N. Y. 522.

*Crawford & Burnett,* for respondent.

The execution of exhibit C, the benefit of which was waived by W. R. Everett did not deprive plaintiff of the right to bring this action. 19 Cyc. 886; Minnock v. Eureka F. Ins. Co. (Mich.) 51 N. W. 367; Measure of Damages: See 17 C. J. p. 694 ¶ 8.

There was no fraud practised by plaintiff in filing his application. H. E. Skauge was agent of the company and his knowledge was the knowledge of the insurance company. Fosmark v. Equitable Fire Asso. 23 S. D. 102, 120 N. W. 777; Lawyer v. Globe Mut. Ins. Co. (S. D.) 127 N. W. 615; Stearns v. Merchants L. Ins. Co. 38 N. C. 524.

Neglect of agent is chargeable to the insurance company. French v. State Farmers Mutual Hail Ins. Co. 29 N. D. 426.

Failure to ascertain loss by arbitration is chargeable to the insurance company. Merger v. Equitable Fire Asso. (S. D.) 107 N. W. 531.

CHRISTIANSON, J. On January 22, 1921, the defendant issued to the plaintiff an insurance policy, of the usual standard form adopted in this state, whereby it insured the plaintiff against loss or damage by fire, lightning, windstorm, cyclone, and tornado, in the sum of $1,500, upon a certain frame barn situated on plaintiff's farm, in Stark county, in this state. On June 25, 1921, the barn was injured by a severe windstorm. On June 27, 1921, the plaintiff filed a written notice of loss, claiming that there was a total loss. A controversy arose between the plaintiff and the defendant as to the extent of damage caused by the storm. The principal difference arose with respect to the concrete foundation under the barn. The plaintiff claimed that certain cracks in the foundation had been caused by the windstorm. The defendant claimed that they were not so occasioned. The parties were unable to agree upon an adjustment, and the plaintiff, thereupon, brought this action.

In its answer, defendant admitted the execution of the policy, also that the barn was injured by the windstorm on June 27, 1921, but specifically alleged that the damage caused did not exceed the sum of $400. The defendant admitted the presentation by the plaintiff of written notice and proof of loss under the policy; but in connection therewith alleged, affirmatively, that the same was false, and untrue, in this, that in such notice and claim the plaintiff wilfully and intentionally represented the loss to be $1,500, whereas the amount of the loss, in truth and fact, did not exceed the sum of $400. The answer further averred that the policy authorized the defendant to repair or restore the property; that, on or about September 15, 1921, it offered to repair the barn, and at all times since has been ready, willing, and able to do

so; but that plaintiff has refused to allow defendant to make such repairs. The answer further averred that the plaintiff, subsequent to June 27, 1921, was adjudged a bankrupt; that a trustee has been appointed in the bankruptcy proceeding, and that, hence, said trustee, and not the plaintiff, is the proper party plaintiff. The answer further averred that the written application of the plaintiff, on which the policy was issued, represented that there was outstanding against said property mortgages amounting only to the sum of $1,000; that said representation was untrue; that the mortgages against the property aggregated about $2,000; that such additional encumbrances increased the risk and hazard, and that said false representations in regard to the encumbrances were made wilfully, and intentionally, for the purpose of deceiving and defrauding the defendant; that by reason of said fraudulent representations, the policy never became effective.

The plaintiff replied denying all the new matter set forth in the answer, except the allegations with regard to the additional encumbrances; and as regards such defense, the reply averred that the plaintiff truthfully represented the amount of outstanding encumbrances; that the agent who prepared the application, and who issued the policy to the plaintiff, had personal knowledge of, and in fact, had personally taken, the mortgage on the premises, which constituted the additional encumbrance, referred to in the answer. The cause was tried to the jury upon the issues thus framed. The jury returned a verdict in favor of the plaintiff in the sum of $800, and interest. Defendant has appealed from the judgment entered upon the verdict.

The first error assigned, and argued, in appellant's brief is that the trial court erred in refusing to permit the defendant to amend its answer so as to allege that the plaintiff had assigned the claim under the policy to Everett Real Estate & Loan Company, or to W. R. Everett. The proposed amendment was based upon the following letter written by the plaintiff to the defendant:

"Dickinson, N. Dak., Dec. 16, 1921.

"Farmers Insurance Co.,
    "Dickinson, N. D.
"Gentlemen:
    "Please attach to your records of Policy No. F. 1824, loss if any,

49 N. D.—31.

payable to Everett Real Estate & Loan Co., or W. R. Everett, as their interest may appear.

"Jacob Roquette."

While the trial court refused the amendment, the letter was received in evidence, and Mr. Everett, who is also the principal officer of the Everett Real Estate & Loan Company, testified as a witness for the defendant. The undisputed evidence shows that the proposed loss payable clause was intended only as security for the payment of some $200 to $300, and was not intended as an assignment of the entire claim. And Everett specifically disclaimed that he or the company had or made any claim against the defendant so far as any part of the cause of action was concerned. Upon the record here it is not at all apparent that the proposed amendment would have constituted any defense, 26 C. J. 483, 484, and it is manifest that the defendant was in no manner prejudiced by the ruling complained of, as Everett, and the Everett Real Estate & Loan Company are concluded by the verdict here and have no cause of action against the defendant under the so-called assignment.

It is next contended that the court erred in instructing the jury as to the measure of damages. The instruction complained of is as follows:

"And if you find for the plaintiff, gentlemen of the jury, then you will assess his damages. And the measure of damages in this case, gentlemen of the jury, is the difference in the value of the barn to the plaintiff before the windstorm on the 25th day of June, 1921, and the value of the same to the plaintiff after said storm."

Appellant contends that this instruction is erroneous for two reasons:

(1) That it permits the jury to allow plaintiff damages based upon the value of the barn to *him*, that is, "the value of the same to the plaintiff," without regard to the actual cash or market value thereof.

(2) That it is contrary to the following stipulation in the policy:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or

estimates shall be made by the insured and this company, or, if they differ, then by appraiser, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. *It shall be optional,* however, with this company to take all, or any part of the articles at such ascertainment or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on *giving notice,* within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment of this company of the property described."

In our opinion, neither contention is well founded. It is true the phraseology of the instruction is not happy, but under the evidence in the case, it is inconceivable that the plaintiff could have been prejudiced by the peculiar language in which the instruction was couched. There was no evidence tending to show that the barn had any peculiar value to the plaintiff. All of the evidence adduced by the plaintiff, as well as by the defendant, had reference to the question of value generally, and the witnesses were examined and cross-examined fully upon the various elements entering into the question of value. The witnesses called on behalf of the plaintiff were cross-examined at great length by the defendant's counsel as to the cost of construction, the depreciation during the course of the years, etc. It is utterly improbable that intelligent men could have been misled by the language of the instruction.

The second contention advanced by the defendant ignores the language of the stipulation in the policy. The stipulation quoted does not say that plaintiff shall be entitled to recover an amount equal to the cost of restoring, or replacing, the property. On the contrary, the provision expressly says that "the loss or damage shall be ascertained, or estimated according to (such) actual cash value, with proper deduction for depreciation, however caused." The further provisions that the "company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs," and that such loss or damage "shall in no event exceed what it would then cost the insured to

repair or replace the same with material of like kind and quality," do
not purport to fix the rule to be applied in determining the amount of
compensation to which the insured will be entitled in case of loss; they
are limitations upon the amount which may be awarded, upon ascer-
tainment of the amount of loss, under the rule prescribed. It would
seem that the two limitations thus prescribed virtually mean the same
thing, and that was, in effect, the ruling of the supreme court of Iowa,
in Erb v. German-American Ins. Co. 98 Iowa, 606, 40 L.R.A. 845,
67 N. W. 583, wherein the court said:

"To show the damages sustained, the plaintiff was used as a witness,
and, for the purposes of the examination, the stock was itemized as
goods, chemicals, syrups, etc., patent medicines, lamps, lamp goods,
paints and oils, etc. The witness under objections, stated the value of
the different items. The following is a provision of the policy:

" 'This company shall not be liable beyond the actual cash value of
the property at the time any damage or loss occurs, and the loss or
damage shall be ascertained and estimated according to such actual cash
value with proper deductions for depreciation and shall in no event
exceed what it would cost to repair and replace the same with materials
of like kind and quality.'

"It is urged that the question asked did not show the measure of
damage agreed upon. We think it tended to. The witness was asked
to state the value which is presumed to mean the actual cash value of
the goods at the time of the loss and that would include any deprecia-
tion. Such cash value would also fix, presumably, the cost of replacing
in a case where result must be had to the markets for that purpose."

It is also well to bear in mind, that in this case, the plaintiff in his
complaint alleged, and contended upon the trial, that there was a total
loss. He at no time abandoned this contention, and according to the
evidence adduced by the plaintiff, the barn, as such, was a total loss.
The evidence so adduced also tended to show that the barn could not be
repaired; that the structure as a whole was so damaged that it could
not reasonably be adapted for use as a basis for restoration. Of course,
there need not be a complete destruction, or obliteration, of a building,
in order to constitute a total loss. It is sufficient that it is so destroyed
that it is deprived of the character in which it was insured and rendered
useless for that purpose. 26 C. J. pp. 349, 350. And where the por-

tion left standing is not reasonably adapted for use as a basis on which to restore the building, that is, where a reasonably prudent owner, uninsured, desiring such a structure as the one in question before the damage, would not use the remnant as a basis for restoration, there is a total loss. 26 C. J. p. 350.

It is next contended that the court erred in failing to instruct the jury as to the effect of a good faith offer to repair. The court in substance told the jury that they might take this into consideration in assessing the damages, but did not make any further instruction. In our opinion, the defendant has no cause to complain of the instruction given. If anything, it was more favorable than the defendant was entitled to under the evidence. In this case, according to the contention of the plaintiff, the entire building, including both the superstructure and the foundation had been destroyed. It will be noted that the provision in the policy gives the company the right "to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time *on giving notice,* within thirty days after the receipt of the proof herein required, of its intention so to do."

The sole evidence adduced on the part of the defendant relating to the offer to repair consisted of the testimony of a builder. He testified that in June 1921, the manager of the defendant company requested him to go out and examine the barn and submit an estimate of the cost of repairing it. That he went out and made such examination and submitted an estimate. The estimate was $543.70. The witness testified that this estimate included only the superstructure, and did not include the foundation. The witness further testified that on or about September 14, 1921, he was instructed by the defendant company to go out and repair the barn. That he proceeded to do so, and upon arriving at the farm informed plaintiff that he had come to repair the barn, and that the plaintiff said: "You don't need to touch it." That he thereupon refrained from repairing the barn. The witness admitted that he was sent out, and that it was his intention, to repair the superstructure only, and that he had no intention of repairing the foundation,—although he said he would have made such repairs if he had found the foundation to be in need of repairs. So far as the evidence shows the only information given to the plaintiff that the defendant intended to exercise the option to repair was the statement by the builder. According

to the evidence there has been no ascertainment of damage, nor has the defendant given any notice of intention to repair.

In our opinion, the evidence adduced by the insurance company on this question did not establish any such condition as bars plaintiff's right to recover in this action. As has been stated, the loss occurred on June 25, 1921; two days after the loss occurred, notice of loss was given; later, on or about September 8th or 9th, the plaintiff submitted a formal, written, verified proof of loss. This action was not commenced until February 17, 1922, and it was not tried until March, 1922. Yet, so far as the evidence shows, the insurance company did not make any repairs, nor did it give any notice of intention to do so. The only thing it did was to send a carpenter out there, with directions to go on and make certain repairs in the superstructure. It also appears that negotiations were had looking toward adjustment and payment of the loss. In the schedules attached to plaintiff's petition in bankruptcy, dated January 23, 1922,—which were offered in evidence by the defendant,— it is stated that the defendant had offered $500 in settlement. And on March 13, 1922, defendant served and filed a written offer of judgment for $550, with accrued costs. Where the insurer exercises the option conferred by the policy by electing to repair, replace, or rebuild, the policy becomes in effect a new and independent contract to replace the property or restore it to its former condition, 26 C. J. p. 450, and it becomes the duty of the insurer to carry out the agreement within the time stipulated in the policy, or if no time is stipulated, then within a reasonable time. We do not believe that the evidence in this case establishes any exercise by the insurer of the option to rebuild so as to create such contract. The primary purpose of an insurance contract is to indemnify the insured against loss, not exceeding the amount stated in the policy. And, within such limit, the insured, except as otherwise provided by law or the provisions of the policy, is entitled to be put in the same pecuniary condition in which he would have been had there been no fire. The policy under consideration here contemplates that ordinarily the loss or damage sustained shall be paid in cash. The option to repair or rebuild is inserted for the benefit of the insurer alone, and if he desires to avail himself of the provisions he must do so at the time and in the manner prescribed therein.

Error is also predicated upon instructions relating to the alleged

false representations in the application for insurance, and the alleged false proof of loss. No instructions were requested by the defendant upon either of these questions, or upon any other question involved in the case.

So far as the question of false and fraudulent representations in the application for insurance is concerned, the instruction was, if anything, more favorable to the defendant than the facts in the case warranted, for the defendant was not entitled to have this defense submitted at all. The undisputed evidence was to the effect that the application for insurance was prepared by the agent, who issued and delivered the policy, and that this same agent had actual knowledge of the then-existing encumbrances. There is no contention that there was any collusion between the plaintiff and such agent. It is the settled law in this state, that the agent of an insurance company, who prepares an application for insurance and issues the policy thereon, acts as the agent of the insurance company and not as the agent of the applicant.

So far as concerns the instruction regarding the alleged false proof of loss, we do not believe that the plaintiff was prejudiced thereby, although we do not approve of the form in which the instruction was given.

It may, also, be noted that the position taken by the defendant that it was willing and ready to repair the barn, was wholly inconsistent with the contention that the policy had been forfeited, or rendered null and void either by false representations in the application for insurance, or in the proof of loss. According to the undisputed testimony, the insurance company had knowledge of the outstanding encumbrances at the time the policy was issued. Two days after the storm it received notice from the plaintiff claiming total loss. Shortly thereafter it caused personal inspection of the barn to be made to ascertain the damage inflicted by the storm. Yet, according to the testimony adduced by the defendant, it recognized the validity of the policy and sought to make repairs on September 14, 1921. Generally, an election by an insurance company to rebuild, or repair, with knowledge of the right to declare a forfeiture, will be deemed a waiver of all defenses of every kind which otherwise it might assert. 26 C. J. p. 338. So far as the evidence here discloses, the defendant at no time disclaimed liability under the policy until after suit was brought; but, on the contrary, treated the policy as a valid and binding contract.

What has been said, covers all assignments of error supported by argument, and, as already indicated, we find no error requiring a reversal. In its rulings on evidence, the trial court was eminently fair to the defendant. Viewing the record as a whole, including the verdict, we are satisfied that the defendant has no reason to complain of the result. The jury viewed the barn at defendant's request. The verdict seems fair and reasonable, and we see no good reason for disturbing it.

Affirmed.

BIRDZELL, Ch. J., and ROBINSON, BRONSON, and GRACE, JJ., concur.