[File No. 6237.]

LEO T. BUTLER, Appellant, v. ÆTNA INSURANCE COMPA-
NY, OF HARTFORD, CONNECTICUT, a Corporation, Re-
spondent.

(256 N. W. 214.)

Opinion filed August 18, 1934.

A. *Leslie, Kvello & Adams* and *Otto L. Kaas,* for appellant.

*Nilles, Oehlert & Nilles,* for respondent.

NUESSLE, J. This is an appeal from an order of the District Court of Sargent County denying plaintiff's motion for a new trial.

The action was brought by the plaintiff to recover on several policies of fire insurance. The essential facts are as follows: On February 10, 1933, the plaintiff, a farmer living in Sargent county, bought a grain elevator. This elevator was situated on the railroad right of way in the little village of Straubville. It was the only elevator there. It was built in 1922 at a cost of $16,000. It was of 40,000 bushel capacity, contained 16 hopper bins, was fully equipped and in good condition. Adjacent to it and as a part of the elevator plant was a coal shed. Plaintiff bought the elevator, together with the coal shed, equipment, and furniture therein, for $5,600. He paid $1,000 cash and gave his notes for the remainder, securing the same by chattel mortgage on

the elevator. He bought from one Mrs. Lewis who had obtained title to the elevator through foreclosure of a mortgage which she had held as security for an indebtedness of $8,000. The elevator had been but little used since 1931 as apparently not much grain was marketed in that community during that period. At the time the plaintiff bought the elevator there was outstanding a fire insurance policy covering it with loss payable to Mrs. Lewis. After the purchase this policy was reduced in amount to $5,500 and was transferred to the plaintiff. Plaintiff also at once took out additional insurance in the amount of $6,100 in four policies, one of which was directly in question in this action. On the night of April 10, the elevator proper together with its entire contents was destroyed by fire. The coal shed was not burned. The fire had an unaccountable origin. Though plaintiff had been using the office of the elevator he had had no fire there for some time. The elevator had not been used for grain storage purposes excepting that a small quantity of seed grain was stored therein, and none had been bought. No train had passed for many hours before the fire. A few days before the fire plaintiff removed a large safe from the office. The coal shed at the time of the fire contained some coal. The shed was valued at around $700.

The instant case was tried to a jury. The jury returned a verdict for the plaintiff and found the cash value of the elevator at the time of the fire to be $3,000. Suit had been instituted upon all of the four policies aggregating $6,100. By stipulation the three other actions were consolidated with and to abide the final result in the instant action. Under the terms of the several policies the total recovery that might be had on them was limited to the cash value of the elevator. Thus the total recovery was limited to the value found by the jury. Plaintiff moved for a new trial, urging as grounds therefor that the verdict of the jury fixing the value of the elevator at $3,000 was contrary to the evidence, and that the court erred in his instructions with respect to the method of determining the value thereof. The motion for new trial was denied. Whereupon the plaintiff perfected the instant appeal.

The plaintiff's contentions on his motion for a new trial and now on this appeal were and are that under the evidence in the case the jury's verdict fixing the cash value of the elevator at $3,000 was inadequate;

that the uncontradicted evidence in the case shows the value was $12,000; that the defendant insurance companies had issued policies of insurance aggregating $6,100; that therefore the verdict should have been for at least that amount.

The only direct affirmative testimony as to the value of the elevator was that of the plaintiff who testified it was worth $12,000 at the time of the fire. The plaintiff had had no experience in the elevator business and predicated his testimony as to value largely on the information he had obtained from lumbermen with respect to the cost of materials that would be required to build the elevator. In addition to the policies of insurance here involved aggregating $6,100, there was also outstanding and in effect the policy of insurance which was in effect at the time of the purchase in the reduced amount of $5,500, so that the whole amount of the outstanding policies aggregated $11,600. There is some dispute in the record as to how it came to pass that the insurance companies issued policies for this amount of coverage. The agent who issued the policies for $6,100, testified he did so pursuant to the plaintiff's statement that he had paid $12,000 for the property, and on account of other misinformation respecting the facts in the case. On the other hand, plaintiff testified that the agent was fully apprised of the amount he had agreed to pay for the elevator and that he had full information as to all the other essential facts at the time the policies were issued. But, in any event, the jury, to whom the question of value was left, found it to be $3,000.

The question of value is always more or less a matter for expert opinion. In such cases the jury are not confined in their consideration of the question to testimony respecting values given by witnesses. They may take into consideration the character, age, condition of the property, its location, and the use to which it is put and the demand for such use, the profit likely to accrue therefrom, the property's salability, and all the one hundred and one other things that go to fix the value of any property. Here there was no testimony, excepting that of the plaintiff, as to the value of the property at the time of the fire, and the plaintiff's contention is largely that in such case and under such conditions there being only the testimony of the plaintiff as to the value of the property, the jury were in effect bound by this testimony. We do not think this is so. The jury are presumed to have been men

and women of reasonable intelligence and business experience. They have the right to consider, together with the plaintiff's testimony, all of the other facts and circumstances as the same appeared to them, including the apparent declining value of the elevator as shown by the fact it was erected in 1922 at a cost of $16,000, that it was permitted to be sold at mortgage foreclosure sale to satisfy a debt of $8,000, that the mortgagee thereafter sold it for $5,600, part time, part cash, and then, applying the common knowledge and experience which the jury possessed, to say what the value was. See Shuman v. Ruud, 35 N. D. 384, 160 N. W. 507; Remington v. Savage, 148 Minn. 405, 182 N. W. 524; Stovern v. Calmar, 204 Iowa, 983, 216 N. W. 112; McAnarney v. Newark F. Ins. Co. 247 N. Y. 176, 159 N. E. 902, 56 A.L.R. 1149; 22 C. J. 728, et seq. See also Axford v. Gaines, 50 N. D. 341, 195 N. W. 555. Of course the jury had the right to pass upon the credibility of the witnesses, including that of the plaintiff, and to determine the weight that should be given to the evidence produced before it. The trial court who saw and heard the witnesses refused to disturb the verdict. As to whether or not a new trial should be granted was a matter largely within his discretion and the exercise of that discretion will not be disturbed unless there was an abuse thereof. See Martin v. Parkins, 55 N. D. 339, 213 N. W. 574, and cases cited. Viewing the whole case by and large we are of the opinion that the plaintiff has not shown that the verdict is so contrary to the evidence as to disclose an abuse of discretion on the part of the trial court in denying the motion for new trial. Accordingly, the order should not be disturbed on that account.

The plaintiff, however, does not rest his whole case on his contention that the verdict was contrary to and unsupported by the evidence. He also insists that the court erred in instructing the jury with respect to the matter of value and the ascertainment of the same and that thereby the plaintiff was prejudiced.

The policy in suit was in the statutory standard form. Among others it contained this provision: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like

kind and quality." The court in his instructions and as a part thereof read the foregoing provision omitting, however, the clause "with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." The plaintiff submitted no written requests for instructions. In considering the merits of his challenge to the propriety of the charge that fact must be borne in mind. The rule is that where a litigant makes no request for instructions on any issue that is submitted to the jury, he cannot complain on account of mere nondirection if the charge as a whole cannot be said to amount to a misdirection. Huber v. Zeiszler, 37 N. D. 556, 164 N. W. 131; Andrieux v. Kaeding, 47 N. D. 17, 181 N. W. 59. And in passing upon the propriety of the instructions the whole thereof must be considered. State v. Kerns, 50 N. D. 927, 198 N. W. 698; State v. Bowe, 57 N. D. 89, 220 N. W. 843. The plaintiff insists that the entire provision of the policy above quoted should have been given by the trial court and that the failure to read the omitted portion led to confusion in the jurors' minds to the prejudice of the plaintiff and induced a misunderstanding as to how the value of the property should be measured. It seems to us, however, there is no basis for this contention. The policy in suit is not a valued policy. Rohlik v. Farmers Ins. Co. 49 N. D. 235, 191 N. W. 347. The jury were expressly told that the important question in dispute was as to the value of the elevator and that the plaintiff was entitled to recover the actual cash value thereof as of the time it was destroyed. The omitted portion of the condition is for the benefit of the insurer. It provides that depreciation from whatever cause must be taken into account in determining the actual cash value of the destroyed property and limits liability under the policy to the amount it would cost to replace the destroyed property in case for any reason the cash value at the time of the loss should exceed such cost. Paul v. St. Paul F. & M. Ins. Co. ante, 253 N. W. 752; Roquette v. Farmers Ins. Co. 49 N. D. 478, 191 N. W. 772; McAnarney v. Newark Ins. Co. 247 N. Y. 176, 159 N. E. 902, supra. We can conceive of no prejudice that could result to the plaintiff because of this omission since the clause omitted was a limitation upon the insurer's liability and for its benefit.

The appellant further insists that the charge with respect to the ascertainment of the value of the property destroyed was misleading and confusing in another direction. The portion of the charge on which he predicates this contention reads as follows: "Now the plaintiff's measure of damages, if he is entitled to recover, is the actual cash value of the property destroyed at the time of the fire on the 10th day of April, 1932. That is a question of fact for you members of the jury to determine. You have a right in arriving at that actual cash value to take into consideration the size of the elevator, the material of which it was composed, its age, the property that was in it, its state of preservation or repair, the condition the elevator was in at the time, and all the other facts and circumstances that you can glean from the evidence, including the place where it was located, the community, and any other fact disclosed by the evidence which will throw any light upon what the actual cash value of the elevator was at the time it was burned. Now you understand what actual cash value means. That does not mean what the elevator could be sold for at that time. It does not mean what it might be worth to the plaintiff, Mr. Butler, but what the elevator could have been sold for on the market at that time for cash, and that would be the measure of the plaintiff's damages, if you find that he is entitled to recover in this case." The appellant's contentions in this regard are that from this instruction it was impossible for the jury to understand what was meant by actual cash value or how they should go about it to determine that value at the time of the fire; that the latter part of the quoted charge is contradictory, confusing, and uncertain; that in one breath the court said that cash value did not mean what the elevator could be sold for at that time and in the next that it meant what the elevator could have been sold for on the market at that time for cash; that, in any event, there was no market for such property at that time and place; that no testimony was offered as to the market value of the elevator and that in fact it had no cash market value.

The insurance contract under which the plaintiff claims to recover is a contract of indemnity. By it the defendant company undertook to make the plaintiff whole as against such loss as he might suffer on account of fire in an amount not exceeding the actual cash value of the

elevator or the face of the policy. See Comp. Laws 1913, § 6458; State v. Hogan (Re Hogan) 8 N. D. 301, 78 N. W. 1051, 45 L.R.A. 166, 73 Am. St. Rep. 759; Elliott, Ev. § 2315. And the trial court so instructed. That is, the plaintiff was entitled to what he lost by the fire in an amount not exceeding the face of the policy. This does not mean what the elevator originally cost; it might not have been worth that. Or what the plaintiff paid for it; he might have made a bad bargain and paid too much or it might have decreased in value after he bought it. On the other hand, if he made a good bargain he was entitled to the benefit of it, or if the elevator had increased in value in the meantime he was entitled to the benefit of such increase. In other words, his loss must be determined as of the time of the fire. Accordingly, he was entitled to recover the full money equivalent of the elevator and thereby be put in as good a position in dollars and cents as he would have occupied had it not been burned. Considering the whole of the charge there could have been no misunderstanding in the jury's mind as to the rights of the plaintiff in these respects. The plaintiff's challenge to the instruction is on account of uncertainty and contradictions in its terms as to the manner in which the actual cash value of the property destroyed should be ascertained. In the case of ordinary personal property, the price of which is fixed in the market, there is no difficulty in measuring what an insured is entitled to under a contract such as is here in question. Ordinarily, actual cash value, fair market price, and market value are synonymous terms. Birmingham F. Ins. Co. v. Pulver, 126 Ill. 329, 18 N. E. 804, 9 Am. St. Rep. 598. But here the property destroyed was a grain elevator situated on a railroad right of way in a small village. Such property is not the subject of frequent purchase and sale. "In order that an article may be said to have a market price, it must be shown that other property of the same kind was the subject of purchase or sale in so many instances that the value became in a measure fixed by a consensus of buyers and sellers in the ordinary course of trade." McGilvra v. Minneapolis, St. P. & S. Ste. M. R. Co. 35 N. D. 275, 159 N. W. 854. See also Cooley, Briefs on Ins. 2d ed. page 5089 et seq. So there could have been no established market price in the instant case. But that does not necessarily mean that there was no market for the property in question, nor that it had no market or actual cash value. Nor does it follow that the

court erred in charging that the measure of the plaintiff's damage was what the elevator could have been sold for on the market at the time of the fire for cash. It seems to us that what is said in the case of Olson v. United States, 292 U. S. 246, 78 L. ed. 1236, 54 S. Ct. 704, exactly fits in the instant case. There the question was as to the damages for the appropriation of flowage easements by the government. The court said: "Flowage easements upon these lands were not currently bought or sold to such an extent as to establish prevailing prices, at or as of the time of the expropriation. As that measure (United States v. New River Collieries, 262 U. S. 341, 344, 67 L. ed. 1014, 1017, 43 S. Ct. 565), is lacking, the market value must be estimated. In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. Brooks-Scanlon Corp. v. United States, 265 U. S. 106, 124, 68 L. ed. 934, 941, 44 S. Ct. 471. The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth."

Reading the whole charge as given by the court in the instant case it seems to us that the plain purport thereof is that, taking into consideration all of the circumstances, if the jury found for the plaintiff, their verdict must be for such amount as would compensate him for the loss suffered by him, and that such loss was what the property was worth in cash at the time of the fire; that they could not put any fanciful or imaginary value upon it; that they could not fix the value at the amount the plaintiff thought it might be worth to him or what it might

have been sold for if sold on time; that they must, as best they could, fix the value at such an amount as in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy.

The order of the district court must be and it is affirmed.

Burr, Ch. J., and Moellring, Christianson and Burke, JJ., concur.