## C. A. REMINGTON v. JOHN A. SAVAGE.[1]

### April 15, 1921.

### No. 22,081.

**Contract — rescission for fraud — verdict sustained.**

1. In an action to recover the contract price of a quantity of iron ore, in which it was interposed in defense that the contract was induced by the fraud of plaintiff, because of which and on the discovery thereof defendant rescinded the same, the evidence is *held* to support the verdict sustaining the defense of fraud.

**Admissible evidence.**

2. Evidence of the fraud is admissible in such cases, though it may in effect contradict some of the terms of the written contract, when taken as a whole it tends to prove that the contract was induced and brought about by the alleged fraud.

**Value of iron ore — expert opinion not conclusive.**

3. Expert opinion evidence as to the market value of the iron ore in its actual condition, *held* not conclusive, and that the trial court erred in directing the jury to return a verdict in harmony with such opinion.

Action in the district court for St. Louis county to recover a balance of $47,083.32 under a contract for the sale of certain iron ore. The case was tried before Fesler, J., who at the close of the testimony denied plaintiff's motion to direct a verdict in favor of plaintiff for the whole amount sued for, and denied defendant's motion to instruct the jury that in no case could they bring in a verdict in favor of the plaintiff for more than $3,633.23, and a jury which returned a verdict in favor of defendant for $2,374.14. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed on condition.

1Reported in 182 N. W. 524.

*Fryberger, Fulton & Spear,* for appellant.
*Washburn, Bailey & Mitchell,* for respondent.

BROWN, C. J.

The parties to this action are independently engaged in mining operations in St. Louis county, and were so engaged at the time of the transaction involved in this action. Plaintiff owned a quantity of iron ore situated upon premises owned or controlled by him, estimated to contain about 50,000 tons. Negotiations between the parties resulted in a sale thereof to defendant on May 24, 1918, upon the terms and conditions stated in a written contract then signed and executed by them. The contract is full and complete on its face, and among other things stated definitely the purchase price of the ore at $2.84¼ per ton, payable in monthly instalments of $11,770.83, on the twenty-fifth day of May and the following months until the total amount, $141,250, was paid in full. It was the "expectation" of the parties at the time, as expressed in the writing, that the ore would average 51.50 per cent of metallic iron per ton, but, in anticipation that it might not hold up to that standard, a schedule of values was incorporated to apply to ore containing less than that per cent of iron; this schedule included ore testing 50, 49 and 48 or less per cent, with a corresponding variation in the price to be paid therefor. The ore was piled at the mine from which it was taken, and the contract contemplated that it was to be shipped over the Great Lakes to the eastern markets, and it was agreed that the character and quality thereof as to contents there ascertained should be final and binding on the parties. Defendant made the first five payments as they came due, though he did not commence to ship out the ore until some time in the month of September following the date of the contract, a period of some five months. He thereafter shipped three cargoes to Cleveland, Ohio, aggregating about 27,000 tons, where the ore was assayed as provided by the contract, and reported to defendant. Defendant claims that the result of the assay disclosed a grade and quality inferior to the representations made by plaintiff to induce the sale, and he thereafter repudiated the contract and refused to go further in the performance thereof or to pay the remaining instalments on the purchase price. An attempt was made by the parties to adjust the matter but without success,

and plaintiff then brought this action to recover the balance due on the contract.

Defendant interposed in defense a claim of fraud and fraudulent representations by plaintiff, upon which he relied in entering into the contract, to the effect that the ore would run and was better than 51.11 per cent in natural iron and better than 58.03 per cent in iron dried, and that the silica therein would not exceed 7.71 per cent; that the representations were false and untrue; that the ore was of an inferior quality, containing much less than the represented iron contents, and much more of silica; that by reason of the inferior quality the ore was worth some 80 cents per ton less than the contract price. Having paid five instalments of the purchase price before the discovery of the fraud, defendant demanded judgment for the amount of the excess payments, measured by the actual value of the ore.

Plaintiff by a reply put in issue the allegations of fraud and fraudulent representations, alleging certain matters in avoidance not here of special importance.

The issues thus presented were submitted to a jury and a verdict was returned for defendant, thus sustaining the allegations of fraud relied upon in defense, and awarding to him the sum of $2,374.14. Plaintiff appealed from an order denying his motion for judgment notwithstanding the verdict or a new trial. The several questions presented in support of the appeal will be considered in their order.

1. The contention of plaintiff, that the evidence is insufficient to support the allegations of the answer that the contract was induced by fraudulent representations, is not sustained. The evidence fully supports the verdict so finding. It appears that the matter of the sale of the ore was the subject of negotiations between the parties for some time prior to the date of the final agreement. The ore was in piles on premises owned or controlled by plaintiff, and was being mined during the time. The condition and quality thereof were fully considered, and assays as it came from the mine were presented and called to the attention of defendant by plaintiff, in connection with verbal statements as to its quality, and to the effect that it was running better than shown by the assays. That the representations were made by plaintiff, substantially as testified by defendant, is clear, and if his testimony is true, a question for

the jury, there is ample basis therein for the verdict.   That defendant relied upon the representations, and had the right to rely thereon, is equally clear; at least there was a fair question upon that feature of the case for the jury.   We do not discuss the evidence, no useful purpose would be served in doing so.   It is sufficient that we have read the record with the result stated.

The further contention, that the evidence offered to prove the alleged representations was inadmissible for the reason that it directly contradicts the terms and provisions of the written contract, is not sound.   It is always open to a party, who claims to have been fraudulently induced to enter into a written contract, to allege and prove the fraud relied upon in impeachment of the transaction.   The fact that the contract was reduced to writing does not change the rule nor preclude the complaining party from impeaching it on that ground.   The purpose as well as the effect of the evidence in such case is to challenge the contract as a whole, not to modify or change the terms and provisions of the writing.   Kerrick v. G. W. Van Dusen & Co. 32 Minn. 317, 20 N. W. 228; Vilett v. Moler, 82 Minn. 12, 84 N. W. 452; Edward Thompson Co. v. Schroeder, 131 Minn. 125, 154 N. W. 792.   The fact that the contract in the case at bar recited that the parties, in entering into the transaction, "expected" the ore to average a certain per cent of iron substance, and, to meet a failure of expectations in that respect, fixed a sliding scale of compensation for the ore removed, depending upon the per cent of iron as ascertained by a final assay by named third persons, in no way renders the contract immune from the charge of fraud.   The fraud may nevertheless be shown, not in contradiction of the terms of the contract, nor of any particular stipulation thereof, but to show that by reason of the fraud there was no contract at all.   The latest expressions of the court upon this subject are found in the opinion of Mr. Justice Holt in Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347.

3. Defendant called a witness who testified, after showing his qualifications, that the ore in its actual condition was worth from 75 to 80 cents per ton less than the contract price.   A witness for plaintiff testified that the presence of 12 per cent silica in iron ore would not affect its value on the market.   The learned trial court, over the objection and exception of plaintiff, instructed the jury that, if they found for defendant on the

question of fraud, they must return in his favor a verdict for $2,374.14, that being the difference between the actual value of the ore shipped out by defendant, for which he had paid, and the contract price, as computed on the basis of the opinion given by defendant's witness just referred to Defendant's counsel also objected to the instruction. The verdict of the jury, as to amount was in compliance with the directions of the court.

We are of opinion and so hold that the instruction was erroneous. The evidence made the question of damages one for the jury and it should have been so submitted. The opinion of the witness as to the value of the ore was not binding on the court or jury, even though not expressly disputed by some other witness. 1 Dunnell, Minn. Dig. § 3334; Poirier Mnfg. Co. v. Griffin, 104 Minn. 239, 116 N. W. 576; Blied v. Barnard, 126 Minn. 159, 147 N. W. 1095; Aldrich v. Grand Rapids Cycle Co. 61 Minn. 531, 63 N. W. 1115. The instructions of the court were therefore error, and the error was prejudicial. But, since the evidence fully supports the verdict upon the other contested issues, and the error relates to one feature of the case only, and may be cured without a retrial of the action by a consent of defendant to waive the damages, a new trial should not unconditionally be granted.

This covers the case and all that need be said in disposing of the questions presented and argued in the briefs. The evidence supports the verdict upon the question of fraudulent representations, and the record presents no reversible error, except as just stated, and for that a new trial must be and is granted, unless defendant within ten days after the going down of the mandate shall file with the clerk of the court below a waiver of the damages given by the verdict. If the waiver be filed, the order appealed from will be and is in all things affirmed. It is so ordered.