# JULIA C. WRIGHT v. OTTO ENGELBERT.[1]

February 23, 1935.

No. 30,168.

*B. W. Wilder* and *William A. Tautges,* for appellant.
*Bundlie & Kelley* and *L. E. Torinus, Jr.,* for respondent.

[1]Reported in 259 N. W. 75.

HILTON, JUSTICE.

Action to recover damages for death by wrongful act. The complaint demanded general damages of $7,500 and special damages of $500. The verdict was for $500 general damages and $471 special damages. Plaintiff appeals from an order denying her motion for new trial. In general the grounds therefor are that the general damages are insufficient and inadequate, appearing to have been given under the influence of passion and prejudice, and that the verdict was not justified by the evidence and was contrary to law. There are also assignments claiming errors of law committed at the trial, by which plaintiff was and is aggrieved and to which exceptions were duly taken. At the close of the evidence the court, considering that defendant's liability had been clearly established, directed the jury to find in plaintiff's favor, submitting to it only the question of damages.

On December 11, 1933, William J. Wright, while riding in an automobile owned and driven by defendant, was seriously injured and died the next day from the effects of the injuries. He was 74 years of age. A man of that age, in normal health, would have an expectancy of life of 6.68 years. Julia C. Wright (67 years old), his widow and sole beneficiary, was appointed administratrix of his estate. They had been married 48 years, and their only children were two adult married daughters, neither of whom lived in the city of Hastings, the residence of decedent and his wife.

Prior to April 17, 1933, decedent had been in apparent good health except that he had hardening of the arteries to a certain extent. On that day he had a slight stroke of apoplexy, as a result of which he stayed in bed for two weeks and was confined to his home for two weeks more. He continued under the care of his physician until June 10, 1933. The stroke partially paralyzed his left side, causing a numbness and restriction of motion in his arm and leg, which continued until his medical treatment ended. Decedent had a blood pressure which was above normal. His physician advised him to discontinue manual labor, his business, and active exercise and to take it easy, hard work having a tendency to cause another stroke. Decedent did not wholly com-

ply with the instructions of his physician. He helped in building a garage, also put on and took off screens and storm windows, gathered firewood at a picnic, and ran a 200-yard foot race. Decedent had been in the dry goods business for over 50 years and owned a large controlling interest therein. On July 28, 1933, upon the above recited advice of his physician, he sold out the store business, receiving $2,450 in cash and about $4,000 in bills receivable, and assumed all the bills payable. He applied the cash to the bills payable and was still owing about $300. Of the $4,000 accounts he had collected only $75. The business had been running down for some time; it had not been profitable for four or five years, and it was not enough to furnish a living for decedent and his wife; part of the wife's resources were used for living expenses. At the time of decedent's death he also owned a quarter interest in the store building property, upon which there was a $2,500 mortgage and unpaid taxes. Shortly before decedent's death the mortgage was foreclosed; it had been determined by the owners that it was not worth redeeming; plaintiff frankly admitted that this property was a liability rather than an asset. Mr. Wright also owned a house and two lots, the value of which was not shown. Plaintiff admitted that she did not know whether the revenue decedent got from his own labors was enough to pay for his own living. Plaintiff had an income of her own from various rented properties that she owned.

■ The damages in this case were not liquidated, nor were they, or could they be, estimated by expert testimony; the amount thereof necessarily rested in the judgment of the jury. Under such circumstances, a motion for new trial upon the ground of excessive or inadequate damages should be made upon the ground specified in 2 Mason Minn. St. 1927, § 9325(5), viz. "Excessive or insufficient damages, appearing to have been given under the influence of passion or prejudice." Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 493, 111 A. S. R. 462, 5 Ann. Cas. 303; English v. M. & St. P. S. Ry. Co. 96 Minn. 213, 104 N. W. 886; Boyle v. Boileau, 174 Minn. 545, 219 N. W. 866. We therefore do not consider the question raised by the assignment that the verdict was not justified by the evidence and was contrary to law.

■ The granting or refusal of a new trial upon the ground of inadequate damages appearing to have been given under the influence of passion or prejudice rests, in the first instance, in the discretion of the trial court. Its determination will not be reversed on appeal except for a clear abuse of discretion. We are to consider the evidence in a light most favorable to the verdict. Such have been the uniform holdings of this court. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7136, 7141, and cases cited. Considering the facts as hereinbefore recited, we cannot say that the general damages awarded were so inadequate as to indicate that they were given under the influence of passion or prejudice.

■ By sufficient assignments of error plaintiff calls in question the admission of certain evidence and alleged irregularities in the trial which she claims were prejudicial. Evidence was received, over objection, that plaintiff collected over $2,400 of insurance carried on the life of decedent and also that at the time of his death decedent was possessed of certain inconsiderable items of personal property and real estate of small value. When plaintiff was on the witness stand on direct examination she was asked by her own counsel if she had any money with which to redeem the business real property from the foreclosure sale. Before she answered, counsel for defendant asked: "May it be understood that I may go into this matter in the event that no objection is made to that question?" Counsel for plaintiff replied: "You can go into that all you want to, I will not object to it." Defendant's counsel, however, did object to the question as being incompetent and immaterial. The court permitted the witness to answer. Her answer was "No." On cross-examination defendant was permitted, over objection, to show that plaintiff had received the insurance money. This evidence was clearly admissible, for she had testified that she had no money. There was no error. This rule is stated in Whitney v. Kaliske, 131 Minn. 261, 154 N. W. 1100 (syllabus):

"Where a party elicits evidence of a certain character, he cannot thereafter be heard to say that such evidence is not admissible, and where he offers evidence that certain conditions exist he can-

not complain that the court permits his evidence to be rebutted." See 5 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) §§ 7193, 7202; State v. Youngquist, 176 Minn. 562, 223 N. W. 917.

The evidence admitted was clearly in rebuttal. Of course, the amount of insurance money received by plaintiff, or the amount of property, real or personal, that became hers at decedent's death, could not be taken into consideration in awarding damages. The court safeguarded plaintiff in a charge to which no objection was made. It charged as follows:

"You cannot reduce the damages recoverable in this case because of the fact that the plaintiff as the wife of the deceased may have received some life insurance benefits out of insurance on Mr. Wright's life; neither can you reduce the damages recoverable in this case because of the fact that the wife may have received some assets or property from the estate of her husband, but the amount of money that she did receive in the way of insurance, among other things, may be considered as bearing on the question concerning whether or not she may or may not have money to redeem from the mortgage foreclosure sale of Mr. Wright's property, and as bearing on the question of Mr. Wright's talents and habits of industry, and the assets and property that Mrs. Wright received from her husband's estate may be considered, among other things, as bearing on the question of Mr. Wright's habits of industry and talents and frugality, but, of course, are not to be deducted from the amount of damages you may find in this case."

We have examined all the claimed errors, including those relative to colloquies between the court and counsel, and find no prejudicial error therein.

Affirmed.