# ELIZABETH BLACKTIN v. LOUIS ALLEN McCARTHY AND ANOTHER.[1]

June 2, 1950.

No. 35,144.

[1]Reported in 42 N. W. (2d) 818.

*Freeman, King, Larson & Peterson* and *Robert L. Hoppe,* for appellant.

*Faegre & Benson, Paul J. McGough,* and *George D. McClintock, Jr.,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiff recoverd a verdict of $2,000 for personal injuries sustained in an accident which occurred on May 5, 1946, near Shakopee. At the time she was riding as a passenger in the automobile of defendant L. A. McCarthy, driven by the defendant Louis Allen McCarthy. The automobile turned over in rounding a curve.

On appeal, plaintiff contends that the trial court erred in denying her motion for an order setting aside the verdict and granting her a new trial on the issue of the inadequacy of the verdict, or for a new trial on all issues. Plaintiff asserts error also in the refusal of the trial court to admit testimony by her as to earnings after she commenced work about a year after the accident.

Plaintiff's injuries, concerning which there is little dispute, were as follows: Fracture dislocation of the left hipbone, which was reduced; fracture of the lower bone in the pelvic girdle, known as the sacrum; fracture of one of the parts of the pelvic bone in front; tearing of the ligaments near the hipbone; and bruises on the face and right arm.

The injuries described required plaintiff's hospitalization for 17 days in Northwestern Hospital in Minneapolis. Casts were there applied on May 9 and May 17, 1946. Thereafter she returned to her home in Kansas City and remained in bed there for another six weeks with a cast on. Subsequent thereto, she was able to get about with the aid of a steel and leather brace on her hip and leg, which she wore until March 1947, some 10 months after the accident. While at home, she suffered pain and discomfort in her hip and back. She could lie only on her back while wearing the cast. She was required to keep her weight off her left leg at least 10 months after her return home, and it required two months more before she regained strength in the leg.

Some three years after the accident, there were still areas showing loss of lime salts in the hip area which affected circulation. The ball of the left hip is not as smooth and even as the right one, a permanent condition. She may require medical attention for another three years in order to see if circulation is properly reëstablished in the injured hip. This will require an expenditure of from $25 to $35 a year during this period.

Her attending physician testified that X rays taken on September 27, 1946, disclosed that "the dislocated hip is well back in the socket" and "seems to be living very well"; and that X rays taken in April 1949 revealed that the ball of the hip was a little irregular. He testified that she had regained a normal range of motion in her left hip, and that recovery from that point of view was perfect; that she was doing very well; that "she is going to be all right"; that the two fractures were not at all serious and required very little treatment; that the fracture of the hip had been repaired; and that the fracture of the sacrum had entirely disappeared.

Plaintiff was 21 years of age at the time of the accident. She had attended the University of Minnesota for two years. She commenced working for the United States government in Chicago in July 1945 and continued to work there until February 1946. Her earnings, including overtime, amounted to approximately $160

per month in this position. She returned to Minneapolis in April 1946 to locate here and to look for work, but had not obtained employment up to the date of the accident, some three weeks after her return.

About a year after the accident she went to work for a firm in Kansas City. Counsel for plaintiff offered to prove that she commenced work in May 1947 at $120 per month and was raised so that at the time of trial she was getting $140 per month. Counsel for defendant objected thereto, on the ground that evidence of earnings a year after the accident was too remote to be competent, relevant, or material. His objection on this ground was sustained. On this issue the trial court instructed the jury:

"* * * If you find that because of the injuries she received in this accident she did lose earnings, then she would be entitled to recover whatever you find to be the reasonable value of the services for the time which you found that she had lost from employment."

It was stipulated that plaintiff had sustained special damages for hospitalization, drugs, and medical care up to the date of the trial in the sum of $781.79.

■ We feel that the verdict returned by the jury is inadequate for the injuries and damages above described. Deducting the stipulated special damages would leave an award of $1,218.21 for all general damages sustained. These would include the injuries received, pain and suffering experienced, the disabilities and permanent effects, if any, resulting from the accident, and loss of earnings.

■ It is well settled that in situations of this kind where a plaintiff is unemployed at the time of the accident general damages may be awarded for loss of earnings, and that evidence of past earnings is an element for consideration in arriving at the amount thereof. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Martin v. Tracy, 187 Minn. 529, 246 N. W. 6; Stenshoel

v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695. As stated in the Stenshoel case (142 Minn. 16, 170 N. W. 696):

"* * * Though technically the plaintiff lost no wages, for she was getting none, it was proper for the jury in fixing her damages to take into consideration her earning capacity, what her services were worth, and the loss or decrease of her ability to continue for a time any performance, or the full performance, of such services. See 4 Sutherland, Damages, § 1246; 2 Sedgwick, Damages, § 482; Dahlberg v. Minneapolis St. Ry. Co. 32 Minn. 404, 21 N. W. 545, 50 Am. Rep. 585. We do not overlook Anderson v. Young, 98 Minn. 355, 108 N. W. 298."

The award returned indicates that the jury either gave no consideration whatever to plaintiff's loss of earnings or, in the alternative, failed to properly compensate her for her other damages. It would seem that $1,218.21 on its face is inadequate for the injuries, pain, suffering, confinement, disability, and subsequent effects suffered by plaintiff as the result of the accident, disregarding entirely the question of consideration for her loss of earnings for the year subsequent thereto. If the latter factor is taken into consideration, the inadequacy of the award becomes obvious.

Perhaps because plaintiff was unemployed at the time of the accident or because she had spent this particular evening with defendant at various night clubs or places of entertainment in and near Shakopee the jury failed to give proper weight to her injuries and the damages which she sustained. Such factors should have had no bearing upon its award, but the amount thereof almost compels the conclusion that they were given consideration by the respective jurors in arriving at a determination of this issue, and that no doubt such factors served to create prejudice in their minds, affecting their ultimate decision. The consequent inadequacy of the award is such that we feel a new trial should be granted on the issue of damages. Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248; Krueger v. Henschke, 210 Minn. 307, 298 N. W. 44; Ul-

rich v. Kessler, 204 Minn. 74, 282 N. W. 801; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582.

■ Ordinarily, if it appears obvious that a verdict is the result of a compromise between the right of recovery and the amount of damages sustained, the case should be returned for a new trial on all the issues. Flaugh v. Egan Chevrolet, Inc. *supra;* Shearer v. Puent, 166 Minn. 425, 208 N. W. 182; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695. Where such a compromise does not fairly appear, but the verdict is nevertheless inadequate, a new trial should cover the latter question only.

Here, the record reveals little dispute on the issue of defendants' negligence or plaintiff's contributory negligence. No negligent act on the part of plaintiff, a passenger in defendants' car, was established. Defendant driver testified that the traffic was fairly light; that everything was "all right" until he got to the curve; that his windshield was clear; that there was no obstruction to his vision; that he permitted his right front wheel to get onto the right-hand shoulder off the pavement; that there was nothing to prevent his seeing the edge of the pavement; that his speed as he drove around the curve was reduced only to 40 miles per hour; that the car at this point tipped and rolled over two or three times; and that the lights of another car coming toward him from the north caused him to move over, but that he was not blinded by the lights, and that he knew of no other reason why his car left the pavement. No evidence of justification or excuse for his acts was submitted. He rested without offering testimony or evidence of any kind in his defense.

Under such circumstances, we feel that no logical purpose will be served in sending the case back for trial on all the issues, and that it should be remanded for a new trial on the issue of damages alone. Hill v. Ross, 198 Minn. 199, 269 N. W. 396.

■ Plaintiff asserts that the trial court erred in excluding evidence of the amount of wages she earned when she resumed working a year after the accident. There is no claim that her earning capacity was permanently impaired. The amount she then received

was not substantially different from her wages prior to the accident. Evidence of her prior earnings had been properly received as bearing upon this issue. Had there been no prior earnings to form a basis for the measurement of her loss in this respect, or had she claimed permanent loss of earning capacity and submitted evidence to substantiate such claim, then under certain circumstances the amount of her subsequent earnings might properly have been received. 25 C. J. S., Damages, § 87. In the absence of such factors, we find no error in the trial court's ruling on this question.

The order appealed from is reversed and the case remanded for a new trial on the issue of damages alone.

Mr. Justice Theodore Christianson, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

