## LAWRENCE L. HURR AND ANOTHER v. ROSCOE C. JOHNSTON.[1]

June 11, 1954.

No. 36,110.

*Philip Neville,* for appellants.

*Faegre & Benson, Paul J. McGough, John A. McEachron, Jr.,* and *G. Alan Cunningham,* for respondent.

NELSON, JUSTICE.

Two negligence actions were consolidated below for jury trial. Plaintiff Sophie Caroline Hurr sued for her personal injuries, and her husband, Lawrence L. Hurr, sued to recover property damages to his automobile, the cost of medical care and services for his wife,

[1]Reported in 65 N. W. (2d) 193.

compensation for loss of her services, and other items of special damage. Actions by the plaintiffs were based on the claimed negligence of the defendant.

The jury returned verdicts for wife and husband in the amounts of $100 and $180.50 respectively. Plaintiffs thereafter moved for an order granting new trials on the issue of damages alone, or, in the alternative, new trials on all issues. The motion was denied. Plaintiffs appeal from the order of the court below.

The accident in question occurred shortly after noon January 16, 1949, while plaintiffs were driving home from church. The plaintiff Lawrence L. Hurr was, at the time, driving an automobile of which he was the owner; the plaintiff Sophie Caroline Hurr, his wife, was seated beside him in the front seat; their son and a friend occupied the rear seat. Plaintiffs were proceeding south on Lyndale avenue, and after crossing the intersection of Twenty-seventh street they came to a stop in a long line of traffic for the signal light on Twenty-eighth street. Within a few seconds an automobile owned and driven by defendant, Roscoe C. Johnston, collided with plaintiffs' automobile from the rear. According to the testimony of the defendant, he had been traveling from 18 to 20 miles per hour but had slowed down to 12 miles per hour while crossing an intersection before reaching the point of collision. There was a sharp dispute in the testimony as to whether there was a patch of ice immediately behind where plaintiffs' automobile had stopped. Plaintiffs' witnesses testified that there was not; defendant and his witnesses testified that there was. The impact from the collision was of sufficient force to drive plaintiffs' automobile into the car immediately ahead. It appears without dispute that the impact of the collision was of such force that it damaged the car ahead of plaintiffs' to the extent of $15, plaintiffs' automobile to the extent of $95.90, and defendant's automobile to the extent of $160. It also appears from the testimony that plaintiffs' automobile and that of the defendant were interlocked and so remained until separated by a wrecker approximately 45 minutes after the accident. It appears that an ambulance was

called by defendant which arrived some five or ten minutes after the accident.

There is in the testimony a sharp controversy as to Mrs. Hurr's conduct immediately after the accident. She testified that she "blacked out" immediately following the impact and could not talk or remember any incidents following the accident until on the way home, some 45 minutes later. The driver of the car which had stopped ahead of plaintiffs' car testified that he spoke to Mrs. Hurr following the accident and that she told him then that she was not hurt. Both this driver and the defendant testified that Mrs. Hurr was entirely conscious and that she severely reprimanded defendant at the scene of the accident. There was also testimony that she told the ambulance physician that she did not need any medical attention and as a result the ambulance was used only to carry defendant's wife to the hospital.

Mrs. Hurr, however, testified that she became nauseated and suffered from a headache the night of the accident and later awoke with a stiff spine and sore swollen right foot and ankle. She went to Dr. R. T. LaVake on Wednesday following the accident and he referred her to Dr. John F. Pohl, an orthopedic surgeon, who examined and treated her at somewhat regular intervals between that time and into the month of October 1949. This is undisputed. It appears that Dr. Pohl, after examining the X rays, diagnosed her condition as a strain of the neck, right shoulder, and right ankle and prescribed heat and other treatment including X ray, for some of the painful areas. It appears from the testimony that upon subsequent examinations made by Dr. Pohl, Mrs. Hurr continued to complain of the pain in her neck and shoulder, and Dr. Pohl later discovered slight atrophy of her right arm indicating that she was not using her right arm normally. She was also examined by a neurologist at the suggestion of Dr. Pohl. During the months between the time of the accident and October of the same year Mrs. Hurr also underwent several heat and exercise treatments as had been prescribed by Dr. Pohl.

Dr. Jacob H. Strickler examined Mrs. Hurr at defendant's request on August 12, 1949. After October 1949 she had no more medical care. She was again examined by Dr. Strickler at defendant's request in the fall of 1952. The testimony of Dr. Strickler is to the effect that he found no residuals of any injury, and his opinion was that Mrs. Hurr could only have sustained muscle strains which would have originally healed in a few days to two months. Dr. Strickler, testifying at the request of the defendant, also discovered by X rays that Mrs. Hurr was suffering from osteoarthritis of the cervical spine and that such symptoms were also apparent on the X rays taken only three days after the accident occurred. Dr. Strickler also found Mrs. Hurr to be suffering from varicose veins, although there was controversy between the doctors testifying as to whether such veins could cause pain in the legs. Plaintiffs did not commence their actions until July 10, 1950.

In the instant cases the evidence presents sharply conflicting versions of the facts surrounding the accident and also the issue of the extent of plaintiff Mrs. Hurr's injuries and whether all the medical expenses incurred were reasonably necessary and connected with injuries arising out of the accident. Plaintiff testified that for better than two months she was unable to do any of her work and was confined to her bed most of the time; that she was only able to do a part of her work by October 1949; and that she continued to suffer as a result of this accident at the time of trial. The only evidence to dispute this claim on the part of plaintiff Mrs. Hurr is to be found in statements made by her, according to defendant's claims, at the scene of the accident and in the medical testimony of defendant's witness Dr. Strickler. On the other hand, she continued under the care and treatment of Dr. Pohl from the third day following the accident until near the end of October 1949, undergoing heat, therapy, and other treatments as prescribed by him and incurring a doctor's bill for examinations and treatments administered on his part alone in the sum of $189.

The evidence discloses the following special damages alleged to have been incurred by the plaintiff Mr. Hurr due to the accident:

| | |
|---|---|
| Car damage to Mr. Hurr's car | $ 95.90 |
| Glasses | 6.90 |
| Dr. LaVake, services to Mrs. Hurr | 10.00 |
| Curative workshop and therapy for Mrs. Hurr | 6.00 |
| Drs. Challberg and Anderson for therapy for Mrs. Hurr | 33.00 |
| Dr. Harold F. Buchstein for neurological examination of Mrs. Hurr | 15.00 |
| Dr. Malcolm B. Hanson for X-ray treatments of Mrs. Hurr | 15.00 |
| Dr. John F. Pohl, physician services | 189.00 |
| Medicines | 29.33 |
| Total | $400.13 |

That these items of special damages were incurred in the amounts stated is undisputed. There was no objection as to foundation, but since the defendant contends that plaintiff's injuries were only trivial, at least a part of the cost of the medical expenses and cost of medical care is challenged in the evidence as not due to the accident or injuries resulting therefrom. The special damages incurred by the plaintiffs total $400.13; $102.80 of this amount consists of property damage to the automobile and Mr. Hurr's glasses, broken as a result of the accident. This means that the jury allowed only $77.70 of the medical expenses and medical care alleged and established without dispute to have been incurred by the plaintiff, its necessity only being disputed and this generally on the part of the defendant and not by any specific testimony directed thereto.

Dr. Pohl, an orthopedic surgeon who treated and examined the plaintiff from time to time over a period of at least nine months, testified at the time of trial that in his opinion the condition of which she complained in her neck and ankle was the result of the accident and that she would probably have ten percent permanent injury to her neck and a ten percent permanent injury to her right leg and ankle resulting therefrom. The evidence indicates that she had a life expectancy at the time of trial of 17.10 years.

The plaintiffs argue that if they are entitled to recover at all then the verdicts are clearly insufficient and cannot stand. Plaintiffs

based their motion for a new trial on the following: (1) That the damages awarded by the jury are insufficient and appear to have been given under the influence of passion and prejudice; (2) that errors of law occurred at the trial which were duly objected to at the time; and (3) that the verdicts are not justified by the evidence and are contrary to law. The motions below were based on the minutes of the court and all the files, records, and proceedings therein.

The real issue is whether the fact that the total damages awarded are less than the special damages alleged makes them inadequate as being the result of the influence of passion or prejudice within the meaning of M. S. A. 1949, § 547.01(5), and Rule 59.01 of Rules of Civil Procedure thereby entitling plaintiffs to new trials on the issue of damages alone, or, in the alternative, new trials on all issues.

The trial court in general made it clear in the charge to the jury that contributory negligence on the part of the plaintiff was not involved and they would not consider any such claim; that the only question of negligence to be considered was, if any, that of the defendant. The court in effect instructed the jury that if the defendant was negligent as a proximate cause of the collision the plaintiffs would be entitled to recover; that if, however, the defendant was not negligent as a proximate cause of the accident the plaintiffs would not be entitled to recover; and that insofar as liability was concerned in the cases it would have to be based entirely upon the question of whether the defendant was negligent as a cause. They were told that, if there was no negligence proximately causing the accident, that would end the lawsuit and there could be no recovery. The jury retired shortly after the noon hour and returned the same afternoon at 3:12 p. m. for further instructions. Upon the jury being called back to the courtroom, the trial court inquired for the foreman of the jury and his name. The foreman spoke up and the following proceedings were recorded:

"I am, your Honor. We want to know whether or not we can award any damages if we find no negligence?

"The Court: No.

"The Foreman: We weren't clear on that.

"The Court: It is a negligence case.

"The Foreman: I guess that's all. (After conferring with another juror.) The other question is, if we do find negligence, can we set the amount?

"The Court: You determine the amount except as to the special damages. For instance, there are items like the repair bill for the automobile. Of course you have a repair bill, and that tells you how much it is, and so with various other items of expenses. But you determine the amount otherwise.

"The Foreman: I guess that's all, your Honor.

"The Court: All right."

The jury then retired and later returned with verdicts as follows: In the Lawrence L. Hurr case, $180.50; in the Sophie Caroline Hurr case, $100.

The verdict of the jury being for the plaintiffs, it is unnecessary to further discuss the issue of defendant's negligence. Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248. Negligence was established by the verdicts, and there is no appeal by defendant from the verdicts.

It is well established that the granting or refusal of a new trial upon the ground of inadequacy of damages given under the influence of passion or prejudice is largely within the discretion of the trial court and that the ruling of the trial court will not be disturbed on appeal unless there was a clear abuse of discretion. Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215; Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391; Krueger v. Henschke, 210 Minn. 307, 298 N. W. 44; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Wright v. Engelbert, 193 Minn. 509, 259 N. W. 75; Leipert v. Honold, 39 Cal. (2d) 462, 247 P. (2d) 324, 29 A. L. R. (2d) 1185.

Plaintiffs argue that, since there was clear evidence of defendant's negligence, a new trial should be granted on the issue of damages alone because of inadequate damages, citing Blacktin v. McCarthy, 231 Minn. 303, 42 N. W. (2d) 818, and Hill v. Ross, 198 Minn. 199,

269 N. W. 396, in support of this proposition. This court held in the Blacktin case that where there does not appear to have been a compromise between the right of recovery and the amount of damages there is no right to a new trial on all issues and that therefore, if the verdict is nevertheless inadequate, a new trial should be ordered on the issue of damages alone. But it is equally well established by the decisions of this court that where the injuries and damages incurred, both general and special, were a direct result of the accident and the size of the verdicts appears inadequate and indicates that they were the result of a compromise between the right of recovery and the amount of damages, then if a new trial is ordered it must be on all the issues. Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263; Olson v. Christiansen, *supra;* Krueger v. Henschke, *supra;* Flaugh v. Egan Chevrolet, Inc. *supra;* Shearer v. Puent, 166 Minn. 425, 208 N. W. 182; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695.

When the jury returned for further instructions, the foreman asked: "We want to know whether or not we can award any damages *if we find no negligence?*" (italics supplied) and "if we do find negligence, can we set the amount?" The foregoing leads us to the conclusion, comparing the amount of special damages alleged with the size of the verdicts, that the final jury agreement upon the verdicts was the result of a compromise between the right of recovery and the amount of the damages.

Inadequacy of damages coupled with a finding of liability shows failure to give the case impartial and conscientious consideration. Where it appears that the damages are entirely inadequate, a new trial will be ordered by the appellate court. Olson v. Christiansen, *supra;* Shearer v. Puent, *supra;* Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391; Flaugh v. Egan Chevrolet, Inc. *supra;* Stenshoel v. G. N. Ry. Co. *supra;* Krueger v. Henschke, *supra;* 5 Dunnell, Dig. & Supp. § 7141.[2]

---

[2] Other cases where this court has reversed on inadequate verdicts are: Alden v. Sacramento S. Fruit Lands Co. 137 Minn. 161, 163 N. W. 133; Siverts v. Dahoot, 150 Minn. 179, 184 N. W. 839; Willett v. Seerup, 151 Minn. 105, 186 N. W. 225.

The plaintiffs here were either entitled to recover the actual special damages proved and something more than what might be termed a nominal amount for general damages or they were not entitled to recover at all. Where general damages are substantial, an award of nothing therefor, or a mere nominal award, will not suffice.

We are of the opinion that the verdicts do not respond to the evidence of the plaintiff, or to that of the defendant, or to the evidence as a whole. The inference from the evidence as a whole and from the attitude of the jury upon their return for additional instructions is strong indication of a compromise between the right of recovery and the amount of damages. Taking the evidence as a whole, the amount of the verdicts returned is more than merely persuasive that they were inadequate as a result of such compromise. If the jury did make such a compromise, then neither plaintiffs nor defendant had the fair judgment of the jury upon all the issues, and under such circumstances the weight of authority holds that a verdict may be successfully assailed. It is our considered opinion, viewing the record as a whole, that passion and prejudice may well be found to have been present as an influence in arriving at the verdicts and that a new trial on all the issues here will be in the interests of justice. Both sides are entitled to a fair, impartial, conscientious consideration of all the evidence by the jury.

The order of the court below is reversed and a new trial granted on all issues.

Reversed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.