## BERNARD BACKMAN v. CLARENCE FITCH.

137 N. W. (2d) 574.

August 20, 1965—Nos. 39,482, 39,505.

*Olson & Kief* and *Herbert E. Olson,* for Backman.
*Powell & Dessert* and *Romaine R. Powell,* for Fitch.

NELSON, JUSTICE.

Two separate actions resulted from an accident in which an automobile driven by Bernard Backman collided with an automobile owned and driven by Clarence Fitch on a country road in Beltrami County, Minnesota, at about 9:30 p. m. on October 20, 1961. The drivers appeared as plaintiffs, and the two actions were consolidated for trial. The jury returned a verdict in favor of Backman against Fitch in the amount of $12,500 and denied recovery to Fitch.

Backman moved before the trial court for a new trial on the issue of damages only upon the grounds that the damages were insufficient. Fitch moved for a new trial on all issues upon the following grounds: (1) Irregularity in the proceedings by the defendant; (2) misconduct of the defendant; (3) surprise which could not have been prevented by ordinary prudence; (4) errors of law occurring at the trial; and (5) the verdict was not justified by the evidence or was contrary to law. Both motions were denied, the trial court attaching the following memorandum to his denial of Backman's motion:

"The court feels that although the verdict was a modest one in view of the fact that the jury found for the plaintiff, nevertheless the court is of the opinion that the amount awarded represented fair compensation for the injuries received, especially in view of the fact that by a subsequent operation the plaintiff would, according to the testimony, be able to perform his usual duties. (See Dziuk v. Loehrer, 266 Minn. 153, 123 N. W. [2d] 86 * * * .)"

The following memorandum was attached to the denial of Fitch's motion:

"It appears to the court that in this case there was a real serious dispute as to the negligence and contributory negligence, and the court

feels that the matter was properly submitted to the jury, and that their determination should stand."

Backman and Fitch each appealed from the judgment entered in his action and Fitch also served a notice of review under authority of Minn. St. 605.065 in the Backman case.

The pertinent facts surrounding the accident may be stated as follows: Bernard Backman, shortly after 9:30 p. m. on October 20, 1961, was driving his son's car on Beltrami County Highway No. 27, in a southwesterly direction, and at about the same time Clarence Fitch was driving his car in a northeasterly direction on the same highway. Each was alone in his automobile. The two vehicles collided near the crest of a hill on a 21-foot-wide gravel road. Fitch testified that he did not see Backman's auto or its headlights until an instant before the impact; that he was going 30 to 35 miles per hour at the time and was on the right side of the imaginary centerline of the roadway. Backman, on the other hand, testified that he saw the headlights from Fitch's automobile approximately 375 feet before the impact occurred; that he was as far to the right as he could be and still remain on the road; and that he could not drive off the edge of the road because of the rough character of the area. Backman further testified that he was going between 5 and 10 miles per hour at the time of impact and that Fitch's automobile was about 3 feet across to the left over the imaginary centerline at the time of the impact.

While the evidence is conflicting, the indications are that the cars came to rest about one foot apart, each being then on its own side of the imaginary centerline with the rear end of each car relatively close to the road's edge. Due to the relative positions of the cars as they came to rest, the jury might well have found the question of liability close, notwithstanding the fact that Fitch did not see Backman's vehicle until an instant before the impact.

Bernard Backman, aged 45, aside from minor temporary injuries in the form of a tenderness of the chest and a bruise on his left knee, suffered a broken left hip or what is technically known as a fracture to the neck of the femur. The fracture was reduced and then fixed by inserting

a Smith-Peterson nail 4 days after hospital admission. After being confined for one month at the Bemidji Hospital, Backman was transported to the Veterans Hospital at Fargo, North Dakota, where it was discovered that the nail which had been inserted was not holding the fracture in proper reduction and further surgery was performed, using a portion of the hip bone, in medical terms called a Macewen's Osteotomy. This surgery was carried out January 8, 1962, Backman having spent time at home with his family during the Christmas holidays. Backman was confined to the Veterans Hospital for about one month following the second operation. This operation also failed to effect a bony union, and at the time of trial Dr. W. J. Deweese, the attending Bemidji surgeon, estimated the disability of the left leg to be 60 to 65 percent. Dr. William A. Kelly, the attending Fargo orthopedist, was not asked for a disability evaluation, but Dr. K. W. Covey, a consulting orthopedist, in a medical report estimated the disability at 50 percent. These three doctors felt that surgery was indicated but differed as to the operative procedure that would best enable Backman to return to his former employment. Dr. Deweese favored inserting a metal head or prosthesis into the shaft of the femur which he felt would preserve motion in the hip joint, give him a stable joint and good weight-bearing capacity. Dr. Deweese also pointed out that such a procedure would have the advantage of a short convalescence, because there is no waiting for bone to heal to bone, and weight-bearing would be possible about a month after surgery. He testified that although he felt the ultimate disability could be reduced to 50 percent such operations produced satisfactory results in 95 percent of the cases if recognition is given to the limitation of things to start with. Dr. Deweese pointed out that following the insertion of an artificial hip joint, although some motion might be lost, the patient could bend his thigh up to right angles to his trunk, could sit comfortably, and could walk up to a mile. In giving this testimony Dr. Deweese appears to have considered Backman's age, activities, and work in favoring that type of artificial hip. The two other orthopedists favored a fusion or arthrodesis of the hip joint. Dr. Kelly felt that in his condition at the time of trial Backman couldn't do manual labor, lifting, or prolonged walking, and that because of his occupation a

stable and painless hip would be of great value. Dr. Covey felt that with a fused or stiff hip Backman could return to his heavy manual labor.

■ With reference to special damages, the medical bills totaled $3,387.78 including cost of ambulance, bills of Bemidji Clinic, nurses, Bemidji Hospital, and Veterans Hospital.

Dr. Deweese estimated that the future surgery he recommends would cost $250, the prosthesis $90 plus 1 month's hospitalization, a hospital cost comparable to that of the Bemidji Hospital which ran $927.98. The testimony by Dr. Kelly indicated that a fusion could involve hospitalization for as long as 3 months and rehabilitation for approximately 1 year. It is indicated that Backman plans on having further surgery if his leg doesn't improve.

Backman made the following allegation in his complaint:

"That as a result, plaintiff was bruised, contused, hurt and injured in and about his entire body; that he was caused to suffer and sustain a severe nervous shock to his entire system; that he incurred expense for medical attention, and will incur expenses for medical attention in the future; the exact amount of which have not been fully determined; was prevented from transacting his business in the past and will be prevented from transacting his business in the future; and was otherwise damaged."

This pleading was followed by a demand for judgment against the defendant in the sum of $75,000.

No one contests the reasonableness of the past medical and hospital expenses and the estimated future medical and hospital expenses should further surgery be undertaken. Thus past and future medical and hospital special damages total about $4,650. It follows that the jury in returning a verdict of $12,500 allowed approximately $8,000 over and above these special damages.

We come then to the consideration of Backman's claim that the jury was bound to give full credit to his claim that he suffered loss of earnings in the sum of $7,500 between the date of the accident, October 20, 1961, and the date of trial, September 23, 1963. It is clear that he seeks to bring his case in line with those decisions holding that where the

special damages approximate the amount of the verdict, and where the injury is serious so that the plaintiff would be entitled to an award of more than nominal damages for permanent injuries, the verdict will be deemed inadequate. He cites in support of his contentions Seydel v. Reuber, 254 Minn. 168, 94 N. W. (2d) 265; Stacy v. Goff, 241 Minn. 301, 62 N. W. (2d) 920; Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263; and Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248.

Rule 9.07, Rules of Civil Procedure, provides: "When items of special damage are claimed, they shall be specifically stated." See Wilson v. Sorge, 256 Minn. 125, 97 N. W. (2d) 477, where this court held that loss of earnings is an item of special damages and as such must be specifically pleaded and proved, but that impairment of earning capacity is an item of general damages.

As to loss of earnings, as well as other elements of his damage, Backman has the burden of proof. Carpenter v. Nelson, 257 Minn. 424, 101 N. W. (2d) 918. The testimony of Backman with reference to his income prior to the accident is as follows:

"Q. And have you trained yourself in any particular type of work?

"A. Well, woods work. I have done that most of my life.

"Q. Has that been hard work, or is that any particular type of woods work?

"A. Well, it's active work. It requires a lot of activity.

"Q. And besides woods work during the year 1961 did you do some selling of some kind?

"A. Yes, I did. I sold some boats, tackle, sporting goods.

"Q. For whom were you selling?

"A. I sold boats for Bemidji Boat Company. I sold tackle for Lund & Kroll Sporting Goods, and I have sold a little insurance, life insurance.

"Q. And for whom did you sell that?

"A. Indianapolis Life.

"Q. Now for the most part can you tell the jury though what your income was derived from?

"A. For what period?

"Q. Well, starting with the time 1945 until you were hurt in 1961?

"A. It run from three to five thousand dollars.

"Q. But generally what type of work were you earning most of that money doing? What type of work?

"A. Well, about half of that was in the woods work.

"Q. And half was doing what other?

"A. The other half was like trapping and guide service and selling.

\* \* \* \* \*

"Q. How long did you then walk on crutches?

"A. Oh, I was on crutches up until this spring.

"Q. And until you got off of the crutches at all did you do any kind of work at all, make any money?

"A. Well, I made a few dollars, but it was very little.

"Q. What did you do, what kind of work did you do?

"A. Well, I had some renewal on life insurances come in, I got a few dollars from that, and I made a few calls on boats.

"Q. Can you tell the jury the approximate amount that you earned?

"A. Oh, approximately $500.

"Q. Has that been from the time that you were hurt up to the present time?

"A. Yes.

\* \* \* \* \*

"Q. Have you, Mr. Backman, attempted to find any employment at all that you felt you were able to do?

"A. No, sir.

"Q. Pardon?

"A. No.

"Q. And have you done any work like cutting wood or cutting down logs or anything like that?

"A. No, I haven't.

"Q. And as far as this selling, I believe that you said that you sold some boats, is that correct?

"A. Yes, I did.

"Q. Now can you tell the jury what your income was after expenses for the year 1961 before the accident?

"A.   Approximately $3500.

"Q.   Is that what you *reported on your income tax?*

"A.   *Yes.*" (Italics supplied.)

Testimony on the part of Backman constitutes the sum and substance of his proof of earnings for the period involved. No effort was made to develop any particulars or details concerning the work and income over the period which he attempted to cover, and there was no indication as to whether the income included wages; whether it included any return on capital investment; whether he had any such asset as trucks, cars, chain saws, boats, motors, or other equipment used in the conduct of logging, trapping, guiding, or in the selling business. It was, to say the least, vague and nothing more than generalization.

The expenses which he was asked about were never identified in any way, nor was any type of income or earnings supported by specific proof or in any manner specifically stated so as to meet the required proof as to items of special damage. There was a failure to describe the various types of selling, that is, whether it was done on strict commission, on salary, or on salary plus commission.

A complaint alleging injury to plaintiff's business in a specified sum has been held insufficient to allow recovery of special damages for loss of particular customers and general loss. Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories (8 Cir.) 17 F. (2d) 255, 52 A. L. R. 1187.

The problems faced by a self-employed plaintiff in proving loss of earnings is pointed out in the recent case of Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. (2d) 134, citing Wilson v. Sorge, *supra.*

When counsel asked Backman what other type of work he had been doing since the accident, the answer was: "Well, *some* of that money consisted of some boat orders and renewals on insurance." (Italics supplied.) The jury had no way of knowing how much of the $500 was attributable to life insurance renewals and how much to boat sales, nor is there any indication as to whether this represented gross income or net income. This applies generally to his testimony as to loss of income. Thus, he failed to specifically plead and prove special damage as required under Rule 9.07.

■ Backman contends that since the defense did not cross-examine on the matter of lost earnings the testimony with regard to the amount of such loss stands undisputed and subject to the doctrine laid down in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. Defendant Fitch contends that it does not follow from counsel's failure to cross-examine Backman that these claims necessarily stand as undisputed; that the evidence as to such loss was incomplete, vague, indefinite, uncorroborated, and unsupported by any breakdown of income and expense or other proof that would provide the jury with a clear picture or outline of exactly what loss of income and earnings was sustained and recoverable as a result of his injury.

This court has held that the rule of the O'Leary case is not an absolute one but that the jury may disregard the positive testimony of a witness although he is not contradicted by other witnesses if his testimony is impeached and made improbable by reasonable inferences drawn from the surrounding physical facts and circumstances disclosed by the record. Nelson v. Ackermann, 249 Minn. 582, 83 N. W. (2d) 500; Knudson v. Nagel, 238 Minn. 186, 56 N. W. (2d) 420; Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215. Even though the testimony of a witness is without extraneous contradiction, it need not be believed by a jury where other circumstances in evidence are such as to discredit it. Weinstein v. Schwartz, 204 Minn. 189, 283 N. W. 127.

The opinion of a witness as to the approximate loss of income, without segregating the various types of work and business followed, would not be binding upon a court or jury even though not expressly disputed by some other witnesses. See, Remington v. Savage, 148 Minn. 405, 182 N. W. 524.

It is to be noted that when Backman stated his annual earnings in the years prior to his injury to have been approximately $3,500 he was asked by his counsel whether this was the amount he reported in his income tax. He answered in the affirmative, but he failed to back up this statement with proof that such income tax reports were actually filed. The jury may well have thought that there was some exaggeration in these amounts because of the vagueness of the testimony and the failure

to indicate what parts of the income were from insurance sales, boat sales, or profits from business. These vague statements of income, made for the purpose of proving loss of income and earnings as special damages, were not necessarily binding or conclusive on the jury under the circumstances, even though such opinions were not expressly disputed by other witnesses. See, Olson v. Moske, 237 Minn. 18, 53 N. W. (2d) 562. We think that the state of the record supplied reasonably good grounds to the trial court for its denial of plaintiff's motion for a new trial on the issue of damages only.

■ The opportunity of the trial court to observe and evaluate the evidence at the trial below must not be overlooked. Mr. Justice Knutson, speaking for this court in Brannan v. Shertzer, 242 Minn. 277, 287, 64 N. W. (2d) 755, 761, said:

"* * * A verdict cannot be set aside simply because this court may be of the opinion that it was not adequate. Because other juries have returned verdicts for larger amounts for similar injuries does not authorize us to interfere with the verdict. There is no fixed standard by which loss for injuries can be determined. Naturally the minds of reasonable men differ widely upon such a proposition. As pointed out in the case of Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391, this court will not interfere with a verdict in such cases unless the damages awarded clearly appear to be excessive or inadequate and to have been given under the influence of passion or prejudice. And whether a new trial upon the ground of excessive or inadequate damages should be granted or refused or whether the verdict should be reduced or increased rests in the sound judicial discretion of the trial court. * * * The trial court was in a much better position than we are to pass upon the question and its action must stand."

After carefully reviewing the testimony in the case at bar, we are unable to find that it would be reasonable to assume that the verdict in favor of Backman was given under the influence of passion or prejudice. If the record did indicate any passion or prejudice on the part of the jury in arriving at its verdict, we feel bound to assume that based upon certain items of evidence which time after time gave rise to motions for

a mistrial by Fitch, such claim would inure only to his benefit. If a new trial were to be granted in this case, it would have to be on all issues, and this Backman did not seek.

Fitch has stated that if this court should affirm the order of the trial court denying Backman's motion for a new trial on the issue of damages only, and his subsequent judgment, then Fitch moves this court for an order dismissing his review in the Backman case and his appeal in his own case.

Where it cannot be concluded that the inadequate verdict resulted from a compromise on liability, or where the issue of liability has been fully and fairly tried and there is no evidence that any passion or prejudice entered into the jury's determination of liability so that it appears unlikely that a different result would be reached on a retrial, a new trial, if granted, will be restricted to the issue of damages alone. Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473; Fortier v. Newman, 248 Minn. 69, 78 N. W. (2d) 382; Propper v. Chicago, R. I. & P. R. Co. 237 Minn. 386, 54 N. W. (2d) 840; Fussner v. Andert, 261 Minn. 347, 361, 113 N. W. (2d) 355, 364; Koenigs v. Werner, 263 Minn. 80, 116 N. W. (2d) 73.

We are unable to say from the testimony and the record, when viewed as a whole, that the damages awarded to Backman were insufficient due to the influence of passion and prejudice, or that the verdict rendered was so inadequate as to give rise to a clear abuse of discretion on the part of the trial court in denying a motion for a new trial on the issue of damages only. It is the general rule in this state that the question of whether a verdict is adequate is addressed in the first instance to the sound discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion. Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L. R. A. (N.S.) 439; Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391. New trials have been ordered by this court on appeal where on the record the damages awarded appeared to be entirely inadequate. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248; Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193; 5 Dunnell, Dig. (3 ed.) § 2598; 14 Dunnell,

Dig. (3 ed.) § 7141; cf. Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133; Krueger v. Knutson, 261 Minn. 144, 111 N. W. (2d) 526.

■ Generally, the function of expert testimony is said to be to assist the jury in reaching a correct conclusion from the facts in evidence. Expert opinions are not ordinarily conclusive on the jury but constitute items of evidence to be considered along with the other evidence in the case. The modern tendency is to make no distinction between evidential and ultimate facts subject to expert opinion. Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; State v. Cox, 172 Minn. 226, 215 N. W. 189.

We thus quote the following from 20 Am. Jur., Evidence, § 782:

"* * * Every expert opinion rests on an assumption of fact; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proved; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts."

We said in James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 337, 16 N. W. (2d) 188, 191:

"Even though questions as to the cause, the character, and the extent of plaintiff's injuries and as to the factors to be considered in arriving at a reasonably correct prognosis were highly scientific ones, yet, as pointed out by this court only recently: 'Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination.' Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 282, 15 N. W. (2d) 487, 493."

As we have already noted, the jury's verdict of $12,500 provided for all past medical, hospital, nursing, and related expense in treating Backman's hip fracture, and allowed for the cost of future corrective surgery which might be expected in order to enable Backman to resume his usual business ventures and related occupations. The verdict pro-

vides almost $8,000 over and above the foregoing special damages to compensate him in general damages, including such loss as impairment of earnings.

Under the circumstances, Backman is entitled to a dismissal of defendant Fitch's appeal and an affirmance of the judgment against him as defendant. We conclude that the record sustains the judgments as entered below.

Affirmed.