BENJAMIN C. SESSLER AND ANOTHER v.
NORMAN R. GOLDFARB.

167 N. W. (2d) 11.

March 21, 1969—No. 41372.

*Primus & Primus* and *Ronald J. Werner,* for appellants.

*Meagher, Geer, Markham & Anderson, Robert M. Frisbee,* and *O. C. Adamson II,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying plaintiffs' motion for amended findings or a new trial. The case involves damages alleged to have been sustained by plaintiffs, Benjamin C. Sessler and Helen M. Sessler, husband and wife, in an accident with defendant-respondent, Norman R. Goldfarb. Essentially, the issue is whether verdicts for plaintiffs of $225 and $50, where the special damages were allegedly $2,185.80 and $148, respectively, were so insufficient and inadequate as to have been given under the influence of passion or prejudice and whether the trial court erred in not granting a new trial on the issue of damages alone.

From the record it appears that on the afternoon of June 24, 1965, plaintiffs were driving west in their automobile on Minnetonka Boulevard in the city of Minneapolis. As they slowed down and stopped for the car ahead to make a right turn into a driveway, they were struck from the rear by an automobile driven by defendant. Sessler described the impact as "pretty hard" and said that the force of it propelled him forward so that he "cracked the plastic all off" the steering wheel. His wife testified that she heard a loud noise and was thrown forward so that **her knee hit the dash.** She was then thrown back so that she hit the side door with her hip. The impact caused pop bottles to fall from the seat to the floor of the car. Defendant testified that at the time of the impact he had just about stopped or was perhaps going a couple of miles an hour. The operator of the automobile ahead of the Sesslers, who had an opportunity to observe the cars to her rear, testified that the Sessler vehicle was not pushed forward by the impact. The damage to the Sessler car, including the left rear fender and taillamp, was estimated at $149, including parts and labor.

Although Sessler had told officers at the scene of the accident that he was not hurt, at the trial he gave an extensive account of personal injuries he claimed to have suffered. They included pain in his back from the cervical to the lumbar area, with accompanying pain in the extremities, which incapacitated him from his work as caretaker of an apartment building. Dr. W. Robert Leslie, who first examined him on August 11, 1965, testified that there was a causal connection between the collision

and strained or torn ligaments which aggravated a preexisting arthritic condition. The medical evidence for the defense, based upon X rays and physical examination, revealed moderate arthritic changes of long standing in the cervical area and marked changes in the lumbosacral area, which indicated osteoarthritis for a period of years. Defendant's medical expert, Dr. David J. Nelson, felt there was no causal relationship between Sessler's arthritis and the accident and further testified that there was no possibility of a strain to the back from the accident.

Helen Sessler testified that after the accident she felt pain in the neck, shoulder, and left knee, had severe headaches, and suffered from blurred vision. Dr. Leslie saw Mrs. Sessler about 8 months after the accident. X rays revealed degenerative changes in the cervical area and calcium deposits in the left shoulder for which cortisone was prescribed. Mrs. Sessler mentioned the injury to her knee for the first time in August 1966, more than a year after the accident. Defendant's medical expert testified that her complaints could not be attributed to the accident.

It appeared from the record that Benjamin Sessler, 56 years of age, engaged in a long series of medical consultations and received treatments and hospitalization subsequent to the accident. These treatments included massages to his back, hot packs, therapy, injections, and traction procedures. In the process, he was hospitalized three times during the period from August 10, 1965, to March 17, 1967. He made between 20 and 25 visits to doctors for medical treatment and physical therapy. At the time of the trial he was wearing a lumbosacral corset and was taking medication for pain in his legs. He complained of inability to sleep, could not walk without a cane, suffered a personality change, and was incapacitated from work. It was stipulated that the value of the hospital services rendered to Mr. Sessler was $1,451.80; the reasonable value of Dr. Leslie's services to him was $585; and the reasonable value of Dr. Leslie's services rendered to Mrs. Sessler was $148. As heretofore indicated, the jury returned verdicts for plaintiffs for $225 and $50, respectively.

In considering plaintiffs' claim that the jury's award was influenced by passion and prejudice, it may be noted that, in reviewing similar claims in other cases, this court has either reversed or sustained, depending

upon the particular facts of the case. Plaintiffs rely on those authorities which indicate that either a plaintiff is entitled to recover his actual special damages and a substantial amount for general damages or he is not entitled to recover anything at all. Hill v. Ross, 198 Minn. 199, 269 N. W. 396; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263; Stacy v. Goff, 241 Minn. 301, 62 N. W. (2d) 920; Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193; Fortier v. Newman, 248 Minn. 69, 78 N. W. (2d) 382; Seydel v. Reuber, 254 Minn. 168, 94 N. W. (2d) 265; Walser v. Vinge, 275 Minn. 230, 146 N. W. (2d) 537.

Defendant, on the other hand, relies on those authorities which emphasize that questions as to the adequacy of the verdict are addressed to the sound discretion of the trial court who heard the witnesses, and that its action will not be reversed on appeal except for a clear abuse of such discretion. These authorities turn on facts which persuade a reviewing court to be mindful of the practical advantage the lower court possesses in considering the propriety of the verdict. Backman v. Fitch, 272 Minn. 143, 137 N. W. (2d) 574; Zaikaner v. Small, 256 Minn. 275, 98 N. W. (2d) 247; Krueger v. Knutson, 261 Minn. 144, 111 N. W. (2d) 526; Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215.

Those cases which hold that where it appears obvious that a verdict is a result of compromise between the right of recovery and the amount of damages sustained,[1] the case should be returned for a new trial on all issues are not particularly relevant here, since it is apparent from the record that there was no real issue as to right of recovery.

In considering whether the particular facts in this case sufficiently justify the verdict reached by the jury, it must first be admitted that the impact between the two automobiles was slight. It is not difficult to assume that the jury would be reluctant to find that the extensive injuries claimed by plaintiffs resulted from this collision. We may assume that, in

---

[1] Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263; Blacktin v. McCarthy, 231 Minn. 303, 42 N. W. (2d) 818; Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193; Krueger v. Knutson, 261 Minn. 144, 111 N. W. (2d) 526.

denying plaintiffs' motion for a new trial, the court below was of the view that the verdicts fairly represented the amount of damages attributable to the accident, and the expenses incurred beyond that amount were reasonably attributable to the preexisting arthritic condition of Mr. Sessler. Likewise, Dr. Nelson's testimony could serve as a basis for the jury's finding that Mrs. Sessler's injury was minimal. It is obvious that the trial court felt that the jury was perceptive rather than perverse. Under the circumstances, we are not warranted in saying that the trial court abused its discretion in denying plaintiffs' motion for a new trial.

Affirmed.