HOWARD PRODGER v. MATHEW ZELL, ALSO KNOWN AS MATT ZELL.

113 N. W. (2d) 168.

January 26, 1962—No. 38,279.

*Markert & Markert,* for appellant.
*James G. Paulos,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying defendant's motion for a new trial on the issue of damages on his counterclaim.

On April 3, 1956, the Church of St. Mark in St. Paul sold a four-plex apartment building located near the intersection of Marshall and Prior Avenues to Charles P. McCarty, Jr., and Francis McGrath, co-partners. About July 19, 1956, McCarty and McGrath entered into an oral contract with plaintiff to move this apartment building to a lot near the intersection of Marshall and Snelling Avenues, a distance of about 1 mile. The contract price for moving the building was $6,500. Of this amount, $2,000 had been paid at the time of the trial of this action, leaving a balance of $4,500.

In order to facilitate the moving of the building it was necessary to cut it in half. Plaintiff's contract called for cutting the building into two sections, moving it to the new site, rejoining the sections, and lowering it onto a foundation, which was to be built by the owners of the building, in substantially the same condition as it was before being moved.

The rear section of the building was moved to its new location without any difficulty. On August 18, 1956, while plaintiff was moving the front section of the building, two of the "bolster beams" supporting the building on moving dollies snapped under the strain. These beams had been purchased by plaintiff, and it is conceded that they were not strong enough to hold the load for which they were used. As a result of the breaking of these beams, the building fell about 2½ feet, causing the damage for which defendant now seeks to recover on his counterclaim.

It is conceded that some damage was done to the building. Plaintiff proceeded to repair the damage and had completed part of it when, in July 1957, the owners of the building posted a notice on the premises that no more work was to be done. Thereafter, plaintiff discontinued any effort to repair the building and commenced this action to recover the unpaid balance on his contract for moving the building. Defendant, Mathew Zell, had purchased the building and procured an assignment from McCarty and McGrath of all claims for damages due from plaintiff.

The trial was by jury. At the close of the evidence the court ruled as a matter of law that plaintiff was entitled to recover the unpaid balance on his contract for moving the building and that defendant was entitled to recover damages in some amount for injury to the building due to plaintiff's negligence in moving it. The only issue submitted to the jury was the amount of defendant's damages on his counterclaim. The jury returned a verdict of $3,500 for plaintiff, which meant that they awarded defendant $1,000 on his counterclaim. On the ground that the verdict on his counterclaim was inadequate, defendant moved for a new trial on the issue of damages. The court granted the motion unless plaintiff would consent to a reduction of his verdict to the sum of $3,000. Plaintiff filed his written consent, and thereby the motion for a new trial stood as denied.

The claims here are that the verdict for plaintiff was excessive;[1] that it was based upon passion and prejudice; and that the court erred in rulings on the admission of evidence that will be discussed hereinafter.

Defendant's claim here rests largely on his contention that the evidence does not sustain the jury's verdict as to the amount he was entitled to recover on his counterclaim. In other words, it is defendant's contention that the amount allowed him is inadequate under the evidence in this case. The evidence, as might be expected, is in conflict. On appeal, it must be viewed in the light most favorable to the verdict. It is also elementary that it was for the jury to say whom they would believe and how much. A brief review of the evidence demon-

---

[1] The real claim is that the verdict on defendant's counterclaim is inadequate.

strates its sufficiency to sustain the fact findings as to the amount of damages.

Plaintiff testified that prior to the moving of the building he made an examination of its interior and exterior. The building was 40 to 50 years old and was of frame construction with a brick veneer exterior. Plaintiff testified that the brick outside was cracked; that the weather had taken its toll on the window sills; and that the inside of the building was also in a dilapidated condition. He testified that the building had "settled" about 3 inches and that the floor was supported by "Tela-posts" to supplement the original beams holding up the building. He testified that the plaster walls inside the building were in poor condition and that work would have to be done in the building if it was to be continued in use.

Charles P. McCarty, Jr., one of the partners who originally contracted with plaintiff to move the building, testified that he and McGrath purchased the building for $1,500 on condition that it would be removed from the land on which it stood. He testified that for a building 40 years old it showed only normal wear and tear and was in the condition that a building of that age, well maintained, would normally be.

John Andres, the former owner of the building, who sold it to St. Mark's Church, testified that he had maintained the building in good condition and that the plaster and outside brickwork were not in need of repair.

Defendant called Joseph L. Bettendorf as a real estate expert. He testified that he inspected the building in 1955 and that it was then in good condition and was well maintained. He stated that the building would have a reasonable market value of $8,000 when placed on its new location, without taking into consideration the value of the land. This valuation he computed by taking the $1,500 paid for the building, plus the cost of moving it of $6,500. There were other estimates as to the value of the building, but the jury could well have believed Bettendorf, and, when the cost of moving the building was subtracted from the value he placed on it, it would leave the building worth only $1,500.

Similar disparity exists in the testimony relating to the work that was required in order to repair the damage done by the negligence of plaintiff. Plaintiff repaired the floor of the building, so that cost was not submitted to the jury. The items of damage submitted were the cost of repairing the brickwork, the plaster, and a canopy on the front of the building. Plaintiff testified that he obtained an estimate from Robert D. Liptak of $1,200 for repairing the brickwork. Liptak was called as a witness by defendant and denied having made such an offer. He estimated that the cost of replacing the brickwork would be about $7,000 to $8,000, but he refused to state any opinion as to the cost of repairing the brick which actually fell as a result of plaintiff's negligence. McCarty estimated that the reasonable cost of repairing the damage would amount to $11,400. We need not discuss a breakdown of this figure, since it is obvious that the jury refused to accept any part of it.

It was disclosed at a pretrial conference that defendant, who purchased the rights of McCarty and McGrath in their claim against plaintiff, paid $2,500 for the building and was to assume the cost of moving it. He was unable to give any estimate of the reasonable cost of repair as he was unfamiliar with the building prior to the time the damage was done.

As to the measure of damages, the court instructed the jury:

"* * * Generally speaking the measure of damage for failure to complete a contract to move a building or to build a building is the difference between the fair and reasonable market value of the property if the contract had been completed in accordance with its terms, and the fair and reasonable market value of the property in the condition in which it is left by the contractor. However, where the defects in the work are of such a character that it is feasible to restore or correct the defects or repair them, the fair and reasonable cost of effecting such restoration and repair less any amount which the restoration or repair would increase the value of the property over and above the value it would have had if the contract had been fully and properly completed. * * * If the proper repair or restoration of these premises would result in a building having more value than the build-

ing would have had if the contract had been properly carried out, the amount of such increase should be deducted by you from the amount of your award.* * * The law does not sanction economic waste. In this case it would not be proper or economically feasible or practicable for the owner to spend more in repairing the building than the building would have been worth if it had not been damaged. Therefore, the maximum recovery in any event would be in an amount not in excess of what you find to be the fair and reasonable market value of the building in the condition in which it would have been if the contract had been completed according to its terms. The fair and reasonable value of the property is not necessarily what a person may have paid for it, plus the cost of moving. If the person who bought the building has made a good deal he is entitled to the benefit of it. The fair and reasonable market value is what the property is fairly and reasonably worth on the market at the time in question."

Defendant took no exception to this charge, nor does he now contend that it does not correctly state the law.[2] While there is some claim that the case rests on a tort, defendant's counterclaim obviously rests on a breach of contract.

■ Defendant relies on McHardy v. Standard Oil Co. 231 Minn. 493, 502, 44 N. W. (2d) 90, 95, where we said:

"In many cases, reduction of an excess verdict accomplishes substantial justice. Where the verdict, in addition to being excessive, is against the great weight of the evidence, there should be a new trial rather than a reduction in the amount of the verdict. [Citing cases.] Where it appears that passion and prejudice may have affected the jury's determination of other issues, as well as the amount of the verdict, a new trial should be granted."

Here, only one issue was involved. Passion and prejudice, if there was such, could not have affected the determination of any other issue.

■ Nor are Blacktin v. McCarthy, 231 Minn. 303, 42 N. W. (2d) 818, and Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193, of

---

[2]For a discussion of the measure of damages in a breach of contract, see H. P. Droher & Sons v. Toushin, 250 Minn. 490, 85 N. W. (2d) 273.

any help to defendant. In those cases we held that, where the jury's verdict does not appear to have been a compromise between the right of recovery and the amount of damages, there is no right to a new trial on all issues; therefore, if the verdict is inadequate, a new trial should be ordered on the issue of damages alone. In the case before us, there could have been no compromise between the right of recovery and the amount of damages inasmuch as the right of recovery was established by the court as a matter of law, and the only issue submitted to the jury was that of the amount of damages. Nothing else is before us. The court's ruling on the issue of plaintiff's right to recover the balance due on his contract and defendant's right of recovery, except for the amount of damages, is not challenged here by anyone. Consequently, the above cases have no bearing on the issues before us.

■ In denying a new trial on condition that plaintiff would consent to a reduction of the verdict in his favor, consideration was undoubtedly given to the fact that the evidence supports an inference that, if the repairs were made that defendant's witnesses claimed were necessary, the building would be in a much better condition than it was to begin with and that the building itself, without consideration of the value of the land on which it stood, was not of great value. While a verdict for a larger amount would undoubtedly have been justified, there is evidence to sustain the verdict returned by the jury. Under these circumstances, there is nothing that can be accomplished by the appeal.

■ The only other claim of defendant that merits any discussion relates to the court's exclusion of opinion evidence concerning the reasonable value of the premises before the building was severed from the land or the value of the premises if the building had been properly relocated according to the contract. We have examined these rulings of the court and are convinced that no prejudicial error was committed.

Defendant relies on cases holding that the owner of property ordinarily may express an opinion as to the value of the property, such as Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305. That rule is applicable where the market value of the property is involved. Here the value of the building as severed from the land, not prior to severance or after relocation, was the only issue. There was

no error in excluding opinions of value not material to the issue involved.

Under the rule pertaining to the measure of damages for breach of contract, the trial court correctly limited opinion evidence to that relating to the value of the property severed from the land or the cost of repairing it so as to place it in the same condition as it would have been if there had been no damage due to plaintiff's negligence. Defendant's inability to have the opinions of his experts admitted in evidence was due to his failure or refusal to recognize the proper measure of damages. We find no error in that respect, and a detailed discussion of defendant's contentions would serve no useful purpose here.

Affirmed.

Mr. Justice Otis, having presided over the pretrial conference, took no part.